THE WROUGHT IRON BRIDGE COMPANY OF CANTON, OHIO, v. THE TOWNSHIP OF JASPER.

*Townships—Allotment of town-line highway for purposes of supervision and repair—Contract for building bridge—Authority of commissioner of highways—Ratification.*

1. Where a township-line road has been allotted, under the statute, between two townships, each becomes liable to keep *its* portion in repair, and *neither* township can legally obligate itself to aid in the erection of a bridge forming a part of that portion of said highway allotted to the other township.
2. A township cannot ratify a contract it could not legally enter into in the first instance.

Case made from Midland. (Hart, J.) Argued January 20, 1888. Decided February 2, 1888.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Frank A. Dean* and *H. L. Fairchild,* for appellant.

*M. H. Stanford,* for defendant.

LONG, J. Plaintiff brought this action in the circuit court for Midland county against the defendant, to recover the amount claimed to be due upon a certain contract made

June 22, 1882, between the plaintiff and the townships of Jasper, Midland county, and Bethany, Gratiot county, for the construction of an iron bridge over Pine river, on the line between said townships.

On February 19, 1887, the cause came on for trial before the court without a jury, and the court filed in the cause the following findings of fact and law:

" On the twenty-second day of June, A. D. 1882, a contract was entered into by and between the plaintiff, and the township of Bethany, Gratiot county, and the township of Jasper, Midland county. It was executed by James M. Johnson, on the part of Bethany, and by John A. Woodard, on the part of Jasper, each acting as highway commissioner, a duplicate of which was filed with the clerk of the defendant, and reads as follows, to wit:

" 'This agreement, made the twenty-second day of June, A. D. 1882, by and between The Wrought Iron Bridge Company of Canton, Stark county, Ohio, of the first part, and the towns of Jasper and Bethany, in Midland and Gratiot counties, State of Michigan, of the second part, witnesseth:

" 'That said first party hereby agrees to furnish all material, and to construct and to complete, ready for travel, the superstructure, for a wrought iron bridge over Pine river, on the county line between Jasper and Bethany, known as the Bailey bridge, in said county and State; said bridge to be seventy feet long, extreme length, to be built in one span of sixty-seven feet in the clear, to have one roadway twelve feet clear width, and 0 footway 0 feet clear width, and to be constructed in accordance with specifications and plan annexed to the original agreement, of which this agreement is a duplicate.

" 'The said second party hereby agrees to have the substructure ready for the erection of, and at right angles to the line of, said superstructure, on or about the twenty-fifth day of August, A. D. 1882.

" ' And said first party agrees to have the superstructure complete on or before the first day of September, 1882.

" ' In consideration of the foregoing material and work to be furnished and executed by said first party, said second party hereby agrees to pay said first party the sum of eight hundred and ninety-two and 50-100 dollars, in manner following, to wit,———hundred dollars on the delivery of the furnished iron work at the nearest railroad station to the bridge site, and the balance of the above amount on the completion of said superstructure ready for travel,

and according to plan and specification annexed to the original agreement; said payment to be made in an order on the treasurer of the respective towns for equal amounts, payable February 1, 1883, at Darrough & Co.'s bank, St. Louis: Provided, that, in case said second party fail to have the substructure completed and ready for said bridge span by the date hereinbefore specified, said second party hereby agrees to pay said first party eighty per cent. of the contract price for said bridge on the delivery of the finished iron work at the bridge site; and for the performance of each and every article of this agreement the said parties hereby bind themselves by these presents.

"'In testimony whereof, witness the signatures of the president and secretary and the corporate seal of the said first party, as provided by its by-laws, and the official signature and seals of said second party; but it is mutually agreed and understood that this contract shall not become binding on said first party until counter-signed by one of its duly elected officers or agents having a written power of attorney duly executed by said first party; nor shall any settlement or payment made under this contract become binding on said first party unless made or acknowledged by one of its agents having specific written authority to make settlement of and receive payment under this contract.

"'WROUGHT IRON BRIDGE COMPANY.
"'By C. Aultman, President.

"'Attest: C. H. JACKSON, Secretary.
"'JAMES M. JOHNSON, Commissioner Bethany.
"'JOHN A. WOODARD, Commissioner Jasper.

"'Countersigned at Jasper, the twenty-second day of June, A. D. 1882.
"'R. D. WHEATON, Agent Wrought Iron Bridge Co.'

"The bridge mentioned in the contract was located on the township line between these two townships where it crosses Pine river, about one and one-half miles from the south-east corner of the township of Jasper.

"Before entering into the contract, the commissioner of the township of Jasper posted notices in five of the most public places in that township two weeks before letting the contract. The notices were for receiving sealed proposals to build a bridge across Pine river, which were to be received on the ground where the bridge was to be built, and at the time of the sale of the job, which was June 22, at 10 o'clock in the forenoon. The plaintiff's proposal was the only one received. About forty people were present at the sale; and an effort was made to get other bids before the job was let to the plaintiff, but none was received. The commissioners of both

townships were present, and the clerk of Jasper was present a part of the time. The supervisor and clerk of Jasper were asked to sign the contract, but refused.

" The bridge was built in accordance with the contract by the plaintiff, and completed about September 1, A. D. 1882. The abutments were built by one Mr. Weaver, and paid for in orders, one-half of the cost of which in orders drawn by Mr. Woodard, as commissioner of Jasper, and the other half by the commissioner of Bethany. The defendant has never paid anything on this contract, either in money or orders.

"A report was made to the township by the commissioner, but no appropriation was made by the township to pay it. One-half of the contract price, with interest at 7 per cent. from February 1, 1883, to the present time, amounts to five hundred and seventy-two dollars and six cents.

" The plaintiff nor its agent, R. D. Wheaton, had any actual knowledge that the township claimed the commissioner had exceeded his authority in making this contract, by reason of that part of the road having been allotted to Bethany.

"In September, 1864, boards of highway commissioners of Bethany and Jasper, at a joint meeting, determined which part of the road between the two townships each should work, and made the following record September 12, 1864:

" ' We, the highway commissioners of the townships of Bethany and Jasper, have this date entered into an agreement as follows, to wit: That the township of Jasper will take, commencing at the corner-post of the south-west corner of Jasper, Midland county, thence east, between Jasper and Bethany, on the county line, three miles, to be worked by said township of Jasper; the other three miles east to be worked by the township of Bethany.

" 'MARSHEL DEPEW,
" 'NICHALOUS DEPEW,
" ' BENSON B. BAILEY,
" ' Commissioners of Highways of Jasper.
" ' W. L. STEBBINS,
" ' H. T. BARTELLO,
" ' JOHN S. NEVENS,
" 'Commissioners of Highways of Bethany.'

" This division or allotment has never been changed or altered since, and, at the time the division was made, the road had not been opened; since which time, and up to the building of the bridge in question, each township has opened and repaired the road allotted to each by this order, except some expenditures that were made on a bridge and approaches

that was built almost nineteen rods below the line into Jasper.

"Bethany did not expend any money on that bridge, because it was claimed the bridge was not on the line. Jasper did expend some money on the approaches. This old bridge was built by county appropriations, Midland county paying one hundred dollars and Gratiot county paying ninety-nine dollars; the bridge costing one hundred and ninety-nine dollars.

"The commissioners of Jasper knew, at the time the job to build the bridge in suit was sold, that that part of the highway on which the bridge stood had been allotted to Bethany, and had been worked and maintained by it, and knew the order had not been changed by any action of the two townships.

"A vote was taken, but without notice previously given, at a township meeting of Jasper, by the inhabitants, on the question as to whether the township would appropriate three hundred dollars towards the building a bridge at this point, which was voted down. It was then contemplated to build a wooden bridge, and the vote was taken at the time of the spring election in 1882.

"After the bridge was built, the abutments gave out, and the town board of the township of Jasper gave to the township of Bethany one hundred dollars to assist them in rebuilding the abutments, and putting the bridge in repair, so it could be used. This was in the summer of 1884.

"The question to be determined is, did the commissioner of highways of Jasper bind the township by making and executing this contract? The precise question involved in this controversy has not, so far as I know, ever been before the Supreme Court, and cannot be said to be free from doubt. The bridge being on that part of the highway allotted to Bethany, I think it was the duty of Bethany to have built and maintained a bridge at this point, under the law, and Jasper was not legally bound to expend anything in its construction.

"The bridge was a part of the highway. It may also be that, had no allotment been made, the contract entered into would have been a valid one, and binding on the defendant; but, if I am right in the above view, and the allotment having been made, that part of the highway became a part of and one of the highways of Bethany for highway purposes, and remains so until the allotment has been changed by the joint act of the commissioners, if, indeed, they have any

authority, under our present law, to make any change after it once has been made.

"But it may be said it is hardship on the plaintiff, who did the work in good faith, and should have its pay. That is true; but it would equally be a hardship for the township to be compelled to pay what it legally ought not to pay after having expended money and built and maintained that part of the road allotted to it. Besides, the plaintiff knew this was a township line, and its authorized agent, R. D. Wheaton, who did the business for the plaintiff, was a resident of this State, and must be presumed to know the law of the State. I therefore conclude, the commissioner of Jasper had no authority to enter into the contract, and by so doing he did not bind the township.

"Ordinary judgment should be entered for the defendant, and for costs to be taxed.

"HENRY HART, Circuit Judge."

To which findings of the circuit judge the said plaintiff afterwards, and on the second day of September, 1887, filed its written exceptions as follows:

"Now comes the said plaintiff, by Frank A. Dean and H. L. Fairchild, its attorneys, and files its exceptions to the findings of law by said court filed herein, as follows:

"First. The said plaintiff hereby excepts to the finding and conclusion of law by said court which is as follows: 'The bridge being on that part of the highway allotted to Bethany, I think it was the duty of Bethany to have built and maintained a bridge at this point, under the law, and Jasper was not legally bound to expend anything in its construction.'

"Second. The said plaintiff excepts to the conclusion and finding of law of said court which is as follows: 'The bridge was a part of the highway. It may also be that, had no allotment been made, the contract entered into would have been a valid one, and binding on the defendant; but, if I am right in the above view, and the allotment having been made, that part of the highway became a part of and one of the highways of Bethany for highway purposes, and remains so until the allotment has been changed by the joint act of the commissioners, if, indeed, they have any authority, under our present law, to make any changes after it once has been made.'

"Third. The said plaintiff excepts to the finding and conclusion of law by the court which is as follows: 'I there-

fore conclude, the commissioner of Jasper had no authority to enter into the contract, and by so doing he did not bind the township.'

"*Fourth.* The said plaintiff excepts to the finding and conclusion of law by said court which is as follows:    'Ordinary judgment should be entered for the defendant, and for the costs to be taxed.'

·"*Fifth.* The said plaintiff excepts to the judgment of the said court rendered against it and in favor of the defendant in this cause for the further reason that the facts found by said court do not support said judgment; and, further, because under the facts found the plaintiff was as matter of law entitled to judgment in its favor.

"*September* 2, 1887."

On the fourth day of June, 1887, judgment was entered in said cause for the defendant, with costs, and the plaintiff brings error.

Under the facts found by the court the record presents but one question: Was the contract entered into by the commissioner of highways with the plaintiff one by which the defendant could be bound?    That part of the highway on which the bridge was constructed was allotted to the township of Bethany in 1864, and since that time has been maintained and worked by it, and the allotment has never been changed.    The law in force at the time of this allotment reads as follows:

"Upon laying out, altering, or discontinuing a highway on the line between adjoining townships, or upon determining what part of such highway shall be made and repaired by each township, the commissioners of such adjoining townships shall act jointly; and application may be made to the commissioners of either township, who shall notify the commissioners of the adjoining township of the time and place of meeting; and said commissioners of adjoining townships shall proceed as before provided, and their return shall be filed in the office of the township clerk of each township; and each township shall have all the rights, and be subject to all the liabilities, in relation to the part of such highway to be made and repaired by such township, *as if the same was located wholly in such township.*"    Section 1255, Comp. Laws 1871.

While some changes have been made since that time relative to the powers and duties of commissioners of highways, this provision as to the opening and maintaining of town-line roads has remained substantially unchanged.

Section 20, chap. 4, tit. 6, Rev. Stat. 1838, contains a provision for the opening and maintaining and allotment to the different townships of town-line roads, and section 21 of that chapter provides :

"Each district shall be considered as wholly belonging to the township to which it shall be allotted for the purpose of opening and improving the road and for keeping it in repair; and the commissioners shall cause such highway, and the partition and allotment thereof, to be recorded in the office of the township clerk in each of their respective townships."

In Rev. Stat. 1846, p. 135, § 16, the following provision appears in relation to the portion of town-line road allotted to a particular township:

"And each township shall have all the rights, and be subject to all the liabilities, in relation to the part of such highway to be made and repaired by such township, as if the same was located wholly in such township."

The same provision was re-enacted in 1857. Section 1057, Comp. Laws 1857. This was repealed in 1861, but was re-enacted, and appears as section 1255, Comp. Laws 1871, and was in force when this allotment in question was made.

Section 1307, How. Stat., was passed in 1881, being substantially the same as that passed in 1846, and was in force at the time the contract was let, and the bridge built, and is as follows:

"And such township * * * shall have all the rights, and be subject to all the liabilities, in relation to the part of such road so allotted, as if the same was located wholly in such township."

It was the duty of the township of Bethany to maintain and keep in repair that part of said road, and the township of Jasper had no more interest in that part of said highway

than it had in any other highway in the township of Beth-
any. It has no duty, by virtue of these statutes, devolving
upon it, to keep or maintain or to repair any portion so
allotted to Bethany.

Section 1445, How. Stat., makes it the duty of townships
to keep in good repair, so that they shall be safe and conven-
ient for public travel, all public highways, bridges, etc., that
are within their jurisdiction, and under their care and con-
trol. Sections 1442 and 1443, passed in 1879 (Laws of 1879,
p. 223), makes the township whose duty it is to keep any
bridge in repair, liable for injuries sustained by reason of
neglect, etc.

This Court held in *Sharp v. Township of Evergreen*, 67
Mich. 443 (35 N. W. Rep. 67), that, where a State road had
been turned over by the statutes of 1836, and placed in the
control and under the care and supervision of the highway
commissioners of the several townships, by virtue of these
statutes, the several line roads were placed under the juris-
diction of the townships between which such road passed,
and that the commissioner of highways was in duty bound
to keep it in good repair and safe for travel, and, failing in
this, the township was liable for injuries occasioned by such
fault or neglect of its commissioner.

The commissioner of highways of the township of Jasper,
Midland county, had no control over that portion of the high-
way. He could not lawfully expend the highway funds of his
township upon that portion of the highway, and he could not
rightfully expend the moneys of his township in building or
to assist in building a bridge there. The contract he entered
into with the plaintiff could not bind the township of
Jasper.

It is claimed, however, by the plaintiff, that the defendant
township is in some way estopped from questioning the
validity of the contract by its own act, or that there has been
a ratification of the contract by the corporation. This is not

so. There may, in certain cases, be a ratification by the corporation of an unauthorized contract. It must, however, in such cases, appear that the contract was one which could in the first instance have been legally entered into by the corporate authorities. There may be cases where knowledge that work is being performed for the use and benefit of a corporation under an authorized contract, and the corporation afterwards accepts and makes use of the work done, would amount to a ratification, but this is not one of that class of cases.

Here the commissioner had no power to appropriate the funds of his township to highway uses, outside the territorial limits of his township, and this road where the bridge in question was built was as much outside such limits, under the allotment made, as though it laid wholly within the township of Bethany; and we find no act done by the corporate authorities that could in any manner be construed into a ratification of the act of the commissioner in making this contract with plaintiff. On the other hand, the clerk and supervisor of the township each refused to sign or recognize the validity of the contract at the time of the letting, and, when called upon to pay, refused to draw the order as demanded by the commissioner. The court was correct in its conclusions of law.

The judgment is affirmed, with costs.

The other Justices concurred.