WILLIE C. STITT, HIGHWAY COMMISSIONER OF THE TOWN-
SHIP OF FULTON, GRATIOT COUNTY, v. WARREN
CASTERLINE, HIGHWAY COMMISSIONER OF
THE TOWNSHIP OF ESSEX, CLIN-
TON COUNTY.

*Bridges—Liability for construction—County-line highway.*

Act No. 230, Laws of 1889 (3 How. Stat. § 1387a *et seq.*), which provides that, whenever the commissioners of highways of two adjoining townships in different counties shall determine that an exigency exists requiring the construction of a bridge on or across the county line over any stream either crossing or running along the boundary line between such townships, such bridge shall be built and maintained at the equal joint expense of such townships, does not affect an existing agreement between two townships, made under Act No. 163, Laws of 1861, determining what part of the town-line road should be made and repaired by each township. *Bridge Co. v. Township of Jasper,* 68 Mich. 441.

*Mandamus.* Submitted on briefs November 20, 1891. Denied December 21, 1891.

Relator applied for *mandamus* to compel respondent to meet with him for the purpose of determining the necessity for the construction of a bridge on a county-line highway. The facts are stated in the opinion.

*B. H. & L. B. Sawyer,* for relator.

*Spaulding & Walbridge,* for respondent.

MORSE, J.   The relator, having taken the necessary and legal steps, under Act No. 230, Laws of 1889, for such meeting, asks the writ of *mandamus* against the respondent to compel him to meet with the relator for the purpose of determining and agreeing upon the exigency existing requiring that a bridge should be constructed on the county line between the counties of Clinton and Gratiot, over Pine creek, on the boundary line between the township of Fulton, in Gratiot county, and the township of Essex, in the county of Clinton, at the equal and joint expense of the said townships.

The main and pertinent facts as disclosed by the petition and return are as follows: There has been for the past 30 years a public highway, duly laid out and worked, commencing at the north-west corner of section 6 in the township of Essex, thence running east on the county line between the counties of Clinton and Gratiot, between sections 6 and 5 of Essex, and sections 31 and 32 of the township of Fulton, in Gratiot county. The petition alleges the road to be two miles long; the answer, one and one-half miles. There is a stream, called "Pine Creek," flowing from the north, and crossing said highway a little west of the south-east corner of the south-west quarter of section 32 of Fulton and onto section 5 of Essex, and emptying into Maple river. This stream, where it crosses the highway, needs a bridge of 50 feet span. Since the 29th day of June, 1861, the township of Fulton

has built two bridges at this point, and has always maintained a bridge at its own expense, under and by virtue of the following agreement entered into by the commissioners of highways of the two townships:

"STATE OF MICHIGAN,  )
  COUNTY OF CLINTON,  }
  TOWNSHIP OF ESSEX.  )

"Know all men by these presents, that we, the commissioners of highways of the township of Essex, Clinton county, and the commissioners of highways of the township of Fulton, Gratiot county, met pursuant to notice of the 28th of June, 1861, for the purpose of dividing the county line in road districts, between the township of Essex and the township of Fulton, and do hereby divide the line of road as follows, to wit: Commencing at the north-east corner of section 1, in township of Essex, running west on county line road; the township of Fulton to take the first eighty rods, and the township of Essex takes the next half mile; the township of Fulton takes the next mile, and the township of Essex takes the next eighty rods,—the distance being two miles of road. Also on the same line, commencing at the north-west corner of section six, in Essex, on the county line road, running east; said township of Essex to take the first mile and the township of Fulton to take the next half mile,—the distance being one mile and one-half.

"In witness we have hereunto signed our names this twenty-eighth day of June, 1861.

                    "R. T. SUMNER,
                    "JAMES SOWLE, JR.,
                    "JAMES YOUDEN,
                    "H. H. MUSSER,
                    "A. I. NORTON,
"Commissioners of Highways of Essex and Fulton.
"The above was received for recording June 28, 1861.
                    "WILLIAM J. MOSS,
                              "Town Clerk."

The bridge now extending across said creek has been condemned, and is unsafe and dangerous, and a new bridge is required to be built over and across said Pine creek.

89 MICH.—16.

The relator claims that under Act No. 230. Laws of 1889, it is now the duty of the townships of Essex and Fulton to build and maintain a bridge at the equal and joint expense of the two townships over said Pine creek. The respondent claims that under the contract above given this duty belongs alone to the township of Fulton, and that the act of 1889 has no effect upon said contract.

The statute under which this agreement was made, or so much as relates to the question before us, was part of Act No. 163, Laws of 1861, and reads as follows:

"Upon laying out, altering, or discontinuing a highway on the line between adjoining townships, or upon determining what part of such highway shall be made and repaired by each township, the commissioners of such adjoining townships shall act jointly; and application may be made to the commissioners of either township, who shall notify the commissioners of the adjoining township of the time and place of meeting; and said commissioners of adjoining townships shall proceed as before provided, and their return shall be filed in the office of the township clerk of each township; and each township shall have all the rights and be subject to all the liabilities in relation to the part of such highway to be made and repaired by such township as if the same was located wholly in such township." See Comp. Laws 1871, § 1255.

In 1881, this act, among others, was repealed by Act No. 242, Laws of 1881, and a general revision made in the laws relative to highways and bridges by Act No. 243 of the same session. The repealing act, however, expressly saved—

"All acts done and all rights acquired under any or all of the aforesaid statutes or acts; and any proceeding had or begun under any of the aforesaid statutes or acts at the time this act shall take effect may be carried forward and completed thereunder, the same as they might have been had this act not been passed."

The law ,of 1881 contained a similar provision to that of 1861. See How. Stat. § 1307. It is claimed by the relator that the act of 1889 repealed or modified section 1307, and that the Legislature had power thus to repeal and modify it, even if the effect of such repeal or modification was to destroy or make void the agreement then existing between the two townships as to the maintenance of this bridge. The right to destroy or impair this contract by subsequent legislation is denied by the respondent.

The first question to be determined is the effect of the act of 1889 upon the existing statutes at that time. The statute is an amendment to chapter 7 of the revision of 1881, by adding four new sections to such chapter. Section 1307, How. Stat., is found under the subdivision of chapter 1 of said revision relating to the joint action of the highway commissioners on line roads between townships, while chapter 7 relates exclusively to the erection, repairing, and preservation of bridges. The first new section added to chapter 7 by the act of 1889 reads as follows:

" Whenever the commissioners of highways of any two adjoining townships in different counties shall determine that an exigency exists requiring that a bridge should be constructed on or across the county line over any stream either crossing or running along the boundary line between such townships, such bridge shall be built and maintained at the equal joint expense of such townships. The commissioners of the townships interested, either of whom may give notice to the other of meetings of said commissioners for the purposes mentioned in this act, shall jointly agree upon the plans and specifications for such bridge, and shall jointly let contracts for the construction thereof in the same manner, as near as may be, as is provided in section one of this chapter, for letting similar contracts: *Provided*, that no such contract shall be let until the money necessary to cover the contract price shall have been raised or provided for by vote of

the electors of said adjoining townships as provided for in sections three and four of this chapter."

The next two sections are not important, as regards this controversy. Section 13 provides that the authority conferred by the three preceding sections for the construction of bridges shall be deemed to include their rebuilding and repair. There is nothing in the act relating in any way to the repeal or modification of any existing laws. Previous to its passage we do not find any statute expressly relating to the building of bridges on town or county line roads.

We held in *Wrought Iron Bridge Co. v. Township of Jasper*, 68 Mich. 441, that an agreement between the highway commissioners of the two townships, similar to the one before us, was valid, and obliged the township of Bethany, within whose allotted portion of the road the bridge was located in that case, to build and maintain the bridge in controversy there as a part of the highway which that township had agreed to keep in repair. The opinion was handed down in the January term, 1888. We are of the opinion that the Legislature, in the act of 1889, did not intend to disturb existing arrangements and agreements between townships, made under the act of 1861, or section 1307, How. Stat., and of the Revision of 1881. Repeals are not favored by implication, and section 1307 is not in any way affected by the act of 1889, except, perhaps, as to bridges. The allotment of the road in portions to each township, to be opened, improved, and maintained, is still authorized and commanded by the statute, and where there is no bridge upon the line of the road it cannot be contended that the act of 1889 touches section 1307 in the least. It certainly is not repealed. It may well be held that in the construction of new bridges upon new roads it is intended that hereafter each township shall join in the

expense of building and maintaining such bridges; and it may be that in rebuilding and repairing bridges, where no agreement has been entered into under then existing laws, it was intended that sections 10, 11, and 12 of the act of 1889 should apply and govern the proceedings, although section 13 is open to the construction that it refers solely to the future rebuilding and repair of bridges upon roads hereafter to be opened upon county lines, and not to the rebuilding and repair of bridges in existence at the time the act was passed. We do not attempt to construe the statute in this respect, as it is not necessary. To bridges to be hereafter built, where no bridge existed before, section 1307 will not apply. To that extent it may be said to be modified by the law of 1889.

But we find no express or implied intention in the act to give the law such retrospective action as would destroy the agreements between townships, lawfully made, existing at the date of its passage, and having been acted upon for years. Such a construction of the act would do great injustice, and is not to be inferred. It must plainly appear that such was the intention of the Legislature. In this case it must be presumed that this allotment, made in 1861, was a just and equitable one, and so considered by both townships, which have acquiesced so long in it, without dissent or protest; the township of Essex maintaining a mile of the road, against the half mile, with the bridge upon it, maintained by the township of Fulton.

It is suggested that this legislation in the act of 1889 was aimed at the decision of this Court in the case of *Wrought Iron Bridge Co. v. Township of Jasper*, but an examination of the cases of *Delta Lumber Co. v. Auditors*, 71 Mich. 572, and *Township Board of Ecorse v. Supervisors of Wayne Co.*, 75 Id. 264, in connection with Act

No: 62, Laws of 1889, will show that Act No. 230, Laws of 1889, as well as Act No. 62, was probably inspired by and grew out of a difficulty between the townships of Ecorse and Springwells in relation to the building of a bridge over the river Rouge, which formed the boundary line between the two townships,—a bridge to replace a bridge which had been jointly erected by the two townships in 1867, and maintained by them jointly until 1886, when Springwells abandoned the care of it. It will be seen that Act No. 230 applies as well to bridges over streams running along the boundary line of two townships as to bridges over streams crossing such boundary line, and no reference is made at all to township or county line roads or highways.

The writ must be denied, with costs.

The other Justices concurred.