BIGELOW *v.* BROOKS.

1. CERTIORARI—JURISDICTION—OBJECTIONS NOT MADE BELOW.
    The Supreme Court will not, on *certiorari*, entertain objections to the jurisdiction which were not made in the court below, nor stated in the. petition as a reason for allowing the writ.

2. MANDAMUS TO HIGHWAY COMMISSIONER — REBUILDING BRIDGE.
    *Mandamus* will lie to compel a commissioner of highways to perform the duty imposed by 3 How. Stat. §§ 1379–1381, of rebuilding a township bridge, when an expenditure of not to exceed $1,000 is involved.   *Travis* v. *Skinner*, 72 Mich. 152, distinguished.

3. HIGHWAYS—TOWN-LINE ROADS—ESTABLISHMENT.
    A road recognized as a town-line road for more than 10 years must, under 3 How. Stat. § 1315, be deemed to be such, though proof is lacking that it was established by the joint action of the township commissioners.

4. SAME — BRIDGES — CONSTRUCTION OF STATUTES — RETROACTIVE EFFECT.
    Act No. 62, Pub. Acts 1889 ( 3 How. Stat. § 1310a *et seq.*),

relating to the construction of bridges on township lines,
will not be given such retrospective action as would destroy
lawful agreements between townships, which existed at the
date of its passage and had long been acted upon.

5. SAME—REPAIR OF BRIDGE—ALLOTMENT BETWEEN TOWNSHIPS.
   It is the duty of townships to rebuild and keep in repair a
   bridge upon a line road between them, although it stands upon
   a portion of the highway allotted to one of them, where the
   construction of bridges was not included in the allotment,
   and the former bridge, as well as its approaches, was con-
   structed and repaired by both townships.

6. SAME—DISCONTINUANCE.
   Under 3 How. Stat. § 1310, providing that no line road be-
   tween two townships, which shall have been in use 10 years,
   shall be discontinued except by the act of the authorities of
   both townships, an attempt by the commissioner of one
   township to discontinue such a road, upon the refusal of the
   other commissioner to act with him in keeping a bridge on
   such road in repair, is ineffectual.

*Certiorari* to Oakland; Smith, J. Submitted November 15, 1898. Decided January 3, 1899.

*Mandamus* by Thomas Bigelow and others to compel David C. Brooks and William F. Wood, highway commissioners of the townships of Southfield and Farmington, respectively, to rebuild a bridge on a town-line road. From an order granting the writ, respondents bring *certiorari*. Affirmed.

*Davis & Bromley*, for relators.

*Aug. C. Baldwin*, for respondent Brooks.

*James H. Lynch*, for respondent Wood.

MOORE, J. The relators filed a petition for a writ of *mandamus* in the Oakland county circuit court. Each of the respondents filed an answer to said petition. These answers denied many of the material allegations contained in the petition. The relators then asked that issues might

be framed and submitted to a jury. The respondents severally objected to the court submitting any questions to the jury. These objections were overruled. The respondents then framed certain questions to be submitted to the jury. After a trial, the jury passed upon the issues submitted to them. The court made findings as to certain questions of fact, and declined to pass upon certain questions of law, and directed a writ of *mandamus* to issue as prayed in the petition. The respondents have brought the case here by writ of *certiorari*. The record does not purport to contain all of the evidence taken in the trial before the jury. The questions involved will better be understood by a reference to the accompanying plat:

West Bloomfield          n          Bloomfield

D

f

c

B

c          A

Farmington          Southfield

Explanation of Plat—A, town-line road between Southfield and Farmington. A to B, road from town line to West Bloomfield. B to D, road in controversy. c to c, old road.

Where the townships of Bloomfield, Southfield, Farmington, and West Bloomfield corner upon each other, the ground is so broken for a distance of about 40 rods each way from the corners that it was not practicable to continue the public highways running north and south and east and west upon the true town line. It is the claim of the relators that the town-line road between Southfield and

Farmington is upon the actual line until it gets to within about 43 rods of the four corners, when it bears west or westerly 38 rods, thence northerly 43 rods, and that it has been opened up and in constant use by the public as a public highway and town-line road for 40 years or more; that the road crosses a stream between B and D, which it is necessary should be bridged, and a bridge has been kept and maintained at this point until the spring of 1894. It is alleged that in June, 1893, the bridge was carried away by high water, and soon thereafter a new bridge was erected by the townships of Farmington and South-field, each township paying half of the expense thereof. This bridge was carried away in 1894, making the high-way impassable. It is alleged the commissioners of high-ways of the two townships neglected and refused to rebuild the bridge, though petitioned to do so by seven or more free-holders and taxpayers, and still neglect and refuse to build the bridge. The petition represents that Thomas Bigelow and his family, and Henry Grinnell and his family, are compelled to travel an extra distance of two miles to reach the village of Franklin, which is their post-office and trading point, and that a large number of persons living in the vicinity of the bridge are put to great inconvenience and damage because of the failure to rebuild the bridge. It represents that it is the duty of the two townships to erect and maintain the bridge; that Mr. Wood is highway commissioner of Farmington, and Mr. Brooks of Southfield; and prays for a writ of *mandamus.*

In the answer of Mr. Brooks, he denies that the portion of the highway westerly from the town line was ever laid out as a public highway of Southfield, or that Southfield ever had any interest in it; that, if anything was done by the officers of Southfield towards paying for the bridge erected, as stated in the petition, the officers acted illegally. He denies he has been petitioned to rebuild the bridge, and avers the bridge has always been in the road district which is in Farmington, and that Southfield is neither equitably nor legally liable to aid in the construction of

the bridge. He says verbal appeals have been made to him to aid in constructing the bridge, but he refused them, because no part of the bridge is within the jurisdiction of Southfield, and the portion of the highway westerly and northerly of junction A is not part of the town-line road between Farmington and Southfield.

In the answer of Mr. Wood, it is stated the township records of Farmington were destroyed by fire in 1874, and he does not know what the records would show about the laying out of the road at the disputed point; that he has lived in Farmington a good many years, and always supposed and believed that the disputed road was part of the town-line road between Southfield and Farmington, and that for at least 20 years the bridges on the town line between the two townships have been constructed and repaired under the joint supervision of the officers of both townships and at the expense of both townships. He says, in 1883, and again in 1893, bridges were erected at the disputed point at the expense of both townships, each paying one-half of the expense thereof; that in 1894 the bridge in controversy, known as the "Bigelow Bridge," was washed away, and the June Hill bridge needed repairs; that Southfield refused to help bear the expense of either of these bridges. He further answers that a petition was presented to the board of supervisors in October, 1894, asking that Southfield be compelled to pay one-half the expense of these two bridges, which petition was refused. He further avers that, because of the condition of the records, Farmington, through its commissioner of highways, discontinued the highway from B to D. He says that he does not know whether the Bigelow bridge is located upon a town-line road or not, but that Farmington was perfectly willing to carry out the arrangement which for years had existed between the townships in relation to bridges.

The jury found the facts to be as follows: They found that the highway from A B to D is a public highway; that from B to D is the town-line highway between Farm-

ington and Southfield, which has been in use by the public as a town-line road since 1883; that it was kept up and maintained by the two townships from 1883 to 1894; that the two townships kept up and maintained the bridge about 11 years prior to the spring of 1894; and that it is a public bridge. They found that it was the duty of the two townships to keep in repair that portion of the highway running from B to D, and to build and maintain the bridge. They also found that it was not reasonably possible to build the highway on the true town line between the townships for a distance of about 40 rods. In response to questions put by the respondents, they found that the evidence did not disclose the disputed highway was laid out by the joint action of the authorities of the two towns, but that it did disclose that they ordered the bridge to be built jointly. They also found that there was no testimony that the authorities of Farmington ever laid out the road, but that one Shattuck did build the bridge, and repaired the same, but no evidence appears that he agreed to keep it in repair. They also found that the road from B to D was discontinued by the commissioner of highways of Farmington in 1895, and had not been re-established. They also found that the bridge was over a mill-race pertaining to the Bigelow Mill, both bridge and mill being in Farmington. They found that the road was changed in 1851 or 1852 to accommodate Mr. Shattuck, who built and maintained a bridge, but did not bind his successors to maintain it. They also found that an allotment of the town-line road was made by the authorities of the two townships in 1861, and that the half mile of road upon which the bridge is situated fell to Southfield, but that the allotment did not include the construction of the bridges.

A great many errors are assigned. We do not deem it necessary to discuss all of them, for nearly all of them depend upon the question whether it was the duty of the highway authorities of the two townships to erect the bridge.

One or two preliminary questions must be passed upon. It is now claimed by the respondents that this proceeding is not brought by the proper relator; that it should have been brought by the attorney general or the prosecuting attorney. This claim was not made in the court below, nor is it stated in the petition for the writ of *certiorari*. If it had been made before the circuit judge, and he thought the claim was well taken, the proceedings could have been discontinued when but little cost was made and not much time would be lost. The respondents, however, did not see fit to make this claim. A hearing has been had, involving a good deal of expense. This court ought not, on *certiorari*, to entertain objections to the jurisdiction which were not made in the court below (*Wilcox* v. *Railroad Co.*, 45 Mich. 280; *Hopkins* v. *Green*, 93 Mich. 394), and which were not stated in the petition as a reason for allowing the writ of *certiorari* (*Grand Rapids, etc., R. Co.* v. *Weiden*, 69 Mich. 572; *Woodmere Cemetery* v. *Roulo*, 104 Mich. 595).

It is also said *mandamus* is not the proper remedy. This question was not raised in the court below. Whether *mandamus* is the proper remedy or not depends upon whether it is the duty of the respondents to build this bridge. The record discloses that a wooden bridge could be built for not exceeding $200, and an iron bridge for not exceeding $500. In *People* v. *Insurance Co.*, 19 Mich. 392, it is said, when a statute imposes a specific duty, and there is no other specific or adequate remedy, the writ of *mandamus* may issue. See *Webster* v. *Newell*, 66 Mich. 503. In *People* v. *Post*, 30 Mich. 353, the writ was refused. In that case the record showed the bridge would cost much in excess of the amount the commissioners were authorized to expend. The writ was also refused in *Travis* v. *Skinner*, 72 Mich. 152, for the reason that, in the opinion of the commissioner, the cost would largely exceed the amount he was authorized to expend for repairs. It is the duty of the highway commissioners of townships to build, rebuild, or repair bridges, and to keep bridges in re-

pair, where they are not called upon to expend more than
$1,000.   3 How. Stat. §§ 1379–1381.

Is it the duty of the two commissioners to rebuild this
bridge?   It is urged on the part of the respondents that
the office of highway commissioner is a statutory one; that
the right to establish a town-line road is given only by the
statute, which requires the joint action of the commission-
ers of the two towns; and that, when it is determined the
highway shall be established as a town line, the commis-
sioners shall at the same time determine and allot what
portion shall be maintained by each township ( 3 How. Stat.
§ 1307 ), subject "to all the liabilities  *  *  *  as if the
same was located wholly in such township;" and counsel
say the inference is irresistible that, if not so allotted, the
commissioner could not go outside his township, and, as
the record does not show this road was established by the
joint action of the commissioners of the two towns, there
is no statutory town-line road, and there can be no joint
liability.

In construing the highway statute, all its provisions
should be taken into consideration and given effect, if pos-
sible.   Sections 1305–1307, 3 How. Stat., confer authority
upon the highway commissioners to lay out roads between
townships, and between townships and municipalities.
Section 1308 provides:

"The commissioners acting jointly in laying out any
line road may, if they consider it necessary to avoid any
obstruction, or for other good cause, deflect the line thereof
from the boundary line, and they may locate and estab-
lish such road in the same manner as if the line thereof
were upon the boundary line; and, when so located and
established, such road shall be deemed a line road for all the
purposes contemplated by this chapter, and the same shall
be opened and improved in the same manner, and with the
same power, privileges, and liabilities, as in case of line
roads."

Section 1310 provides that no line road which shall have
been in use 10 years shall be discontinued except by the
act of the authorities of both townships.

Section 1315 reads:

"All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways, subject to be altered or discontinued according (to) the provisions of this act. All highways that are or that may become such by time and use shall be four rods in width, and, where they are situated on section or quarter-section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be two rods in width on each side of such lines."

It is impossible to read this record, especially in view of the location of the highway, without coming to the conclusion that the town authorities regarded the deflected portion of the road as part of the town-line road. As the records of the highways for Farmington were destroyed by fire, it is not known what they contained. It is very clear, however, that from 1883 to 1893, inclusive, the authorities of both townships recognized a joint obligation to construct and maintain this bridge. Whatever may have been the origin of this highway in the first instance, it must be regarded as a public highway (3 How. Stat. § 1315); and, as this road has been recognized as a town-line road for more than 10 years, it must be deemed to be such.

It is said that, when the township authorities cannot agree about the construction of a bridge on the town line, the proceeding must be governed by Act No. 62, Pub. Acts 1889 (3 How. Stat. § 1310a *et seq.*), and the authorities should have appealed to the board of supervisors. In *Stitt* v. *Casterline*, 89 Mich. 239, it is held by the court, in construing a similar statute, that it could not be given such "retrospective action as would destroy the agreements between townships lawfully made, existing at the date of its passage, and having been acted upon for years. Such a construction of the act would do great injustice, and is not to be inferred." In *Sharp* v. *Township of Evergreen*, 67 Mich. 443, it is held, in relation to a

State road built upon the division line of two townships, that a fair construction of the provisions of the statute places the line road under the jurisdiction of the townships between which it passes, and that, where the commissioners have made a verbal allotment of what portions of the road the several townships shall build, which agreement has been acted upon, the township will be liable. In *Wrought-Iron Bridge Co.* v. *Township of Jasper*, 68 Mich. 441, it is held that, where a township-line road has been allotted under the statute, each township becomes liable to keep its portion in repair, and one township cannot obligate itself to aid in the erection of a bridge forming a part of the highway allotted to the other town. A reference is made to the case of *Sharp* v. *Township of Evergreen*, and the language used in it is quoted approvingly. All the cases hold it is the duty of the highway commissioners to keep the highways and bridges in a condition reasonably safe and fit for travel. The record shows that, as long ago as 1861, the commissioners of these two townships allotted the portions of the town line to each of the townships, and the portion of highway in dispute would fall under the allotment to Southfield; but it also shows that the construction of the bridges on the town line was not included in the allotment. It also shows, and the jury found, that as early as 1883 the highway authorities of both townships built this bridge at the joint expense of the two townships. In 1893 it was rebuilt by them. The approaches to the bridge were kept in repair by the two townships, and I have no doubt it is the duty of the two townships to rebuild the bridge and keep it in repair.

It is claimed the highway was discontinued in 1895. What was done was the act of the highway commissioner of Farmington. If we are right in the conclusion that this was a town-line road, it could not be discontinued except by the joint act of the authorities of the two townships. 3 How. Stat. § 1310.

Judgment is affirmed.

The other Justices concurred.