KINGSLEY *v.* NYLAND.

BRIDGES — REPAIRS — DISCRETION OF TOWNSHIP AUTHORITIES —
MANDAMUS.

> Under 2 Comp. Laws, §§ 4129–4134, the opinion of the township
> authorities as to the cost of repairing a bridge must prevail,
> and, if they are honestly of the opinion that the necessary
> repairs cannot be made for an amount within their power to
> expend, the court will not substitute its judgment for theirs,
> and issue a *mandamus* to compel the making of the repairs.

*Certiorari* to Allegan; Padgham, J. Submitted
April 5, 1904. (Calendar No. 20,423.) Decided May 17,
1904.

*Mandamus* by Frank W. Kingsley and others to com-
pel John H. Nyland, highway commissioner, and Lam-
bertus Scholten and others, composing the township board,
of Laketown township, to repair a bridge. From an
order granting the writ, respondents bring *certiorari.*
Reversed.

*Hyde, Earle & Thornton,* for relators.

*C. R. Wilkes,* for respondents.

MOORE, C. J. Twenty-five of the property owners of
the township of Laketown, Allegan county, Mich., living
on the highway running north from Gosshorn Lake, on
the 21st day of November, 1902, filed a petition in the cir-
cuit court for the county of Allegan for a *mandamus*
against the highway commissioner and township board
of Laketown to compel the repair of the bridge on the
highway aforesaid across Gosshorn Lake. The matter
was heard before Judge Padgham, who granted the writ.
This is a *certiorari* to review Judge Padgham's action.

The record discloses it is 621 feet across Gosshorn Lake

where the bridge is located.    The bridge is a floating one. It was built about 40 years ago, and moved to its present location in 1887, and became a part of the public highway. The water in the lake over which the bridge passes varies from a few feet to upwards of 50 feet in depth.    It is the claim of the township authorities that in the spring of 1902 the bridge was badly out of repair; that, by direction of the township meeting, the township board appointed a committee of 12 freeholders to investigate its condition and report; that in April this committee made an investigation, and reported it unsafe for travel.    It is also claimed that in May, 1902, the highway commissioner investigated its condition, and found nearly all of the top layer of planks to be rotten, the railings all gone, some of the stringers rotten, and all of them so soft they would not hold spikes. The floats were sound, but so water soaked they had lost their buoyancy.    He made a report to the township board of what he had found, and in the report stated it would cost $1,000 for the material alone to repair the bridge so it would answer its purpose for four years; that the bridge was dangerous, and for that reason he had closed it. Soon after this, the township board, as a body, examined the bridge and its condition, and reached the conclusion it could not be put in safe repair without expending more than $2,000, and decided to close the bridge, and submit to the voters the question of raising sufficient money to rebuild the bridge so it would be practically a new one.

The relators are greatly inconvenienced by the closing of this bridge, as they are compelled to go much farther to reach their accustomed market, and their children much farther to reach the school which they attend.    It is their claim the bridge could be put in reasonable repair for less than $1,000.    They applied to the circuit court for the writ of *mandamus* to compel the respondents to put it in repair.    A hearing was had in open court before the circuit judge.    While the case was pending before him, the township authorities caused another examination to be made by Mr. Gaines, who, it is claimed, is an expert in

the employ of the Grand Rapids Bridge Company, who reported the bridge as badly damaged and water soaked, and was of the opinion it would cost at least $3,800 to make it safe for travel. The township board submitted a proposition at the spring election of 1903 to raise $4,000 to put the bridge in repair. The proposition was voted down. At the hearing before the circuit judge a great many witnesses were sworn. Some of them were of the opinion the bridge could be repaired for less than $1,000; others thought it would cost upwards of $3,000.

The judge made, among others, the following findings:

"I also find from the evidence that the bridge can be repaired and put in condition and made reasonably fit and safe for the public travel for a sum not exceeding $1,000. * * *

"I find that the respondents have full knowledge of the condition of this bridge, and that it is out of repair, and not reasonably safe and fit for the public travel in the condition it is now in, and have neglected and refused to repair the same, or put it in condition for public travel, and have condemned the same, and closed it to all travel.

"As a matter of law, I find that it is the duty of the respondents, or the township, to keep its highways and bridges in a condition reasonably safe and fit for travel. The law also makes it the duty of the commissioner to oversee and have the care of the building, rebuilding, or repairing of the bridges in his township, and, if a case arises involving an expenditure of more than $50, the commissioner shall submit the proposed expenditure to the township board. From the testimony and the facts found in this case, it brings the expenditure called for within the amount which may be expended by the commissioner and the township board. * * *

"It is therefore considered, ordered, and adjudged by the court that a writ of *mandamus* do issue as prayed by the petitioners," etc.

After directing that the *mandamus* issue to the township board to repair the bridge, he said:

"I am of the opinion that the respondents have acted in good faith in this matter, and therefore no costs will be allowed."

In his return made to this court he says:

"As to the second allegation of error, this respondent says that in the seventh finding he found that respondents have full knowledge of the condition of the bridge, and that it is out of repair and unsafe, and that they have neglected and refused to repair it, and have condemned it and closed it to travel."

As to the language at the end of the judgment entry, he returns:

"That respondent did not intend, by the language quoted, to in any wise lessen the effect of his findings in the case; that respondent was satisfied from the testimony that the respondents [township officers] had been mistaken and misled as to the real condition of the bridge, and the cost of repair thereof.

"As to the third, fourth, fifth, and sixth allegations of error, this respondent says that the judgment of the township board as to the cost of repairing the bridge was based upon an insufficient and superficial examination of its condition."

It is the claim of the township officers that they were called upon to exercise a discretion, and as they exercised it in good faith, as was found by the trial judge, their action will not be reviewed by *mandamus*. On the other hand, it is claimed the court did not find they had acted in good faith, and that the duty is upon the officers to keep this highway in repair, and, as they have failed to do so, the writ should issue.

The proceeding is brought under sections 4129–4134, 2 Comp. Laws. These sections of the statute have been construed by this court in the following cases: *Bigelow* v. *Brooks*, 119 Mich. 208 (77 N. W. 810); *Attorney General* v. *Board of Sup'rs*, 120 Mich. 357 (79 N. W. 567); *Brophy* v. *Schindler*, 126 Mich. 341 (85 N. W. 1114); *Berube* v. *Wheeler*, 128 Mich. 32 (87 N. W. 50); and *Oxby* v. *Board of Sup'rs*, 124 Mich. 463 (83 N. W. 132).

In the cases of *Attorney, General* v. *Board of Sup'rs* and *Oxby* v. *Board of Sup'rs* the court declined to interfere by *mandamus*. In the other cases it was held *man-*

*damus* will lie to compel the rebuilding or repairing of a
bridge where the expenditure does not exceed $1,000.   To
the same effect is *People, ex rel. Goodsell,* v. *Post,* 30
Mich. 353.   These cases, however, do not meet the case
at bar.   Here is a very serious dispute as to whether this
long bridge can be made reasonably safe by an expendi-
ture within the power of the highway commissioner and
the township board to make.   The township authorities
are of the opinion it cannot be done.   The circuit judge is
of a different opinion.   Under these circumstances, whose
opinion is to control?

In Mechem on Public Officers, § 945, it is said:

"Where the law imposes upon a public officer the right
and duty to exercise judgment or discretion in respect to
any matter submitted to him, or in reference to which he
is called upon to act, it is, of course, his judgment or dis-
cretion that is to be exercised, and not that of any other
officer or court.   The courts, therefore, will not attempt
by *mandamus* to compel the officer vested with such dis-
cretion to exercise it in any particular way, or come to
any particular decision, or to revise or alter his judgment
when he has once exercised it."

Again (section 636):

"There is a large class of officers whose duties lie wholly
outside of the domain of courts of justice, or concern
the business of courts only incidentally or occasionally,
and who are yet called upon by law to exercise, for the
benefit of the public or of individuals, powers very nearly
akin to those of judges in the courts.   The powers con-
ferred upon this class of officers are often, to distinguish
them from those of judges proper, termed '*quasi* judicial'
or 'discretionary.'"

In section 639 Mr. Mechem includes various officers
whose actions are *quasi* judicial, and, among others,
"highway officers, authorized to lay out, alter, or discon-
tinue highways,   *   *   *   or to exercise their judgment
as to the making or repairing of highways."

In *People, ex rel. Houghton County,* v. *Auditor
General,* 36 Mich. 271, it is said:

" *Mandamus* lies only to enforce strict legal rights, and will not be granted to enforce the doing of an act which by law lies in the discretion of the officer refusing to do it."

In *People, ex rel. Sweet,* v. *Adam,* 3 Mich. 427, it is said:

" The writ of *mandamus* will only be granted to compel the performance of a ministerial act, not dependent upon the exercise of judicial discretion."

In the case of *People, ex rel. Goodsell,* v. *Post,* 30 Mich. 353, it was held that:

"A highway commissioner would not be compelled by *mandamus* to go on under the statute and cause a bridge to be built in the place of one which had been destroyed, where the cost greatly exceeded the amount prescribed by the statute."

In *Perrine* v. *Township Board of Hamlin,* 48 Mich. 641, it was held that " the Supreme Court will not interfere by *mandamus* to compel a township board to repair a public bridge."

In the case of *Travis* v. *Skinner,* 72 Mich. 158 (40 N. W. 237), Justice LONG, in speaking for the court, used this language:

"If the cost of the repairs or rebuilding of this bridge exceeds $1,000,—and from the opinion of the commissioner it appears that it would cost $1,500 to make it reasonably safe for public travel,—then the only duty devolving upon the commissioner was to report the facts to the township clerk, whose duty it is to lay it before the township board, and they may submit the question for raising such moneys to a vote of the electors of the township."

Again:

" In his answer the commissioner states that in his opinion the cost would exceed $1,000, exclusive of the approaches. He has also caused estimates to be made of such cost by experts, and is advised by them that the cost of rebuilding or repairing this bridge would exceed $1,000. *   *   * Many affidavits are annexed to the petition, showing that this bridge would cost much less than the

$1,000; but we cannot from this showing set up our opinion, gathered from these facts stated in the affidavits, in opposition to the opinion of the commissioner, which is to prevail, and upon which he has the undoubted right to act under this statute."

Until this highway is legally vacated and discontinued, it is the duty of the township to repair this bridge or replace it by another, so that it shall be reasonably safe and fit for travel; but we do not think the statute confers upon the courts the right to substitute their judgment for that of the local authorities in relation to how the bridges of the township shall be maintained, nor to decide how much the necessary repairs will cost, where there is an honest dispute as to what expenditure will be required. When the necessity for this bridge becomes sufficiently urgent, the voters of the township will doubtless do their duty, and provide the necessary means to make the highway reasonably safe and fit for travel.

The order is reversed, and proceedings quashed. No costs will be allowed.

CARPENTER, GRANT, and HOOKER, JJ., concurred. MONTGOMERY, J., took no part in the decision.