THE PEOPLE EX REL. JAMES E. McBRIDE, POLICE JUSTICE OF GRAND RAPIDS v. THE BOARD OF SUPERVISORS OF KENT COUNTY.

*Police court of Grand Rapids—Collection of costs.*

A servant, agent or attorney cannot enforce in his own name the rights of his principal or master.

Respondents in mandamus proceedings are entitled to insist that they shall not be drawn into litigation by any one who cannot

properly be relator, nor deprived of the responsibility of an actual proper party to the record.

The police justice of Grand Rapids has no authority to proceed against the supervisors of Kent county by mandamus to compel them to audit and allow to the city the fees charged by the Police Act upon the county in cases tried before him.

The collection of municipal demands against other corporations is civil and not criminal business, and properly belongs to the city attorney and counselor and not to the police justice.

The Police Act of Grand Rapids requires the police justice to collect the costs imposed by him upon individuals, but not such costs as are payable by the county to the city under the act.

MANDAMUS. Submitted January 22. Denied April 2.

*Wm. Wisner Taylor* for the relator.

*S. H. Ballard* and *F. G. Holmes* for respondents.

GRAVES, J. This is an application to compel respondents to audit and allow at relator's instance a large amount of charges he claims to be due from the county to the city of Grand Rapids by force of the act of 1873, as amended in 1875, to establish and organize a police court in that city. 3 Sess. L. 1873, p. 189; Local Acts 1875, p. 742.

Among many other objections the board insist that relator, who is the police justice of the city, is not competent to call them to account and prosecute this proceeding here by mandamus in his name, and I am satisfied the point is well taken. He has no interest in the controversy beyond that possessed by other citizens and inhabitants of the city, and does not profess to have, and the ground of action is essentially private.

The city, relying upon the Police Act referred to, claims of the county the fees prescribed by the general laws for items of service performed by him and other salaried city officers in executing what the city regards as general State enactments against crime, and his appearance upon the record in the character of relator is not grounded upon any right or interest of his in these fees or upon any assumption that the cause of action is such as to

authorize a mere citizen to intervene, but solely upon the claim that section eight of the Police Act, as amended in 1875, is to be so interpreted as to make it his duty *ex officio* to collect these fees of the county for the benefit of the city.

This is the full extent of the claim set up to show that he is qualified to move here in his own person for a writ to coerce the board of supervisors to perform a legal duty they owe the city of Grand Rapids.

Let it be conceded for the present that the Legislature intended that he should receive from the county and pay over to the city the class of fees in question, and moreover should "collect" from the county for the benefit of the city, and still the consequence drawn is wholly unwarranted.

His relation to the city would be then merely that of servant, agent or attorney. He would not be master or principal and could not sue in his own name. The courts could not recognize him as identical with the city. He would be compelled to hold the subordinate and very distinct position of attorney or agent, and the city would have to be plaintiff. Such must be the result even though the provision mentioned is deemed a warrant of attorney to him. As the court observed in *Bates v. The Overseers of the Poor of Plymouth*, "in no form of process can a mere servant or agent be permitted to enforce, in his own name, the rights of his principal or master." 14 Gray, 163. A law ordering that a cause of action arising to a city against a county should be sued or be suable in the individual name of the city police justice would be an anomaly, and the terms would have to be clear and explicit to authorize any tribunal to impute such a purpose to the Legislature, and surely the provisions in question do not require it. The respondents are entitled to insist that they shall not be drawn into litigation through unauthorized intermeddling or be deprived of the responsibility which the presence of the real proper party on the records would assume. *People*

*ex rel. Drake v. The Regents,* 4 Mich., 98; *People ex rel. Russell v. Inspectors and Agent of State Prison,* id., 187; *Bates v. Overseers etc.,* supra; *Ex parte Fleming,* 2 Wall., 759; *Hagadorn v. Raux,* 72 N. Y., 583.

But I think the Legislature have not attempted to devolve the power and duty on the police justice to pursue the county in any mode either in his own name or in that of the city or in court or out of court for the fees arising to the city, and that the opposite construction is unreasonable. The title of the law does not favor the position, and the terms made use of in regard to collecting costs may be entirely satisfied without stretching them so as to comprehend this function which is foreign to the office and distinct from the scheme of the law.

It must be obvious to all that there can be nothing in common between the duties proper to a police justice and the business of collecting claims for the city against the county, and there is no possible ground for contending that fitness for the one would necessarily imply fitness for the other. Certainly there is nothing in our experience concerning the compatibility of duties and the connection of aptitudes for different affairs sufficient to afford any grounds for thinking the Legislature may have assumed that the man who might at any time be chosen to fill the office of police justice would be the proper one *ex officio* to enforce these city claims against the county.

The city charter had provided for an attorney and counsellor and his functions would naturally include the business of collecting city demands against other corporations, and hence there is no room for saying no other provision was made. Indeed some surprise would naturally be felt if it were really found, that this officer, who, on every consideration of the fitness of means to ends, is conspicuously pointed out as the proper one, had been ignored and that the agency and duty had

been devolved upon an office not *prima facie* suitable.

Now the construction contended for necessitates the assumption that the Legislature in this specific instance meant to deviate from the usual course and assign an important duty to an inappropriate agency rather than an appropriate one, and moreover to commit the duty under such provisions that even the common council should not be able to intervene and control. At the same time no reason is suggested for distinguishing this class of claims by regulations so exceptive and extraordinary. The purpose ought not to be imputed to the Legislature except upon the clearest evidence.

That the power attributed to the justice is not germane to the office and is one purely civil in its nature must, I conceive, be admitted. And if this position is correct there appears to be good ground for urging that the Legislature have distinctly indicated their sense that the words supposed to convey to the justice the power in question were not used with that intent. I refer to section two, where after defining the jurisdiction and without embracing this power so apparently inapt for a criminal magistrate, the Legislature say, "but said police justice shall exercise no civil jurisdiction whatever, except as hereinbefore provided."

In connection with these considerations and without noticing the objections made to the validity of the act, it seems proper to refer somewhat more particularly to those provisions which have the most bearing on the question we are considering.

It is too plain to be disputed and has therefore been hitherto assumed that the scheme of the act contemplated that the police justice and the members of the police force should not be remunerated by fees or itemized pay, but should have stated general allowances from the city, and payable monthly, for all their services; and that as to certain of their services among those rendered in executing general state laws against alleged penal offenders, and for which they would be compensated by the gen-

eral allowance from the city, the same fees should nevertheless be allowed against the county for the benefit of the city as are given for the like services under the general laws of the state to justices of the peace, sheriffs, turnkeys and constables, and should be paid by the county to the city. And it is essential to bear this peculiar feature of the act in mind when the provisions for the collection of fees are read.

The seventh section has not been amended, and the first branch imperatively requires that the complaining witness, when a non-resident, shall in all cases give security for costs before process, but in other cases remits it to the discretion of the justice to require such security or not and as well after as before process. The other branch of the section provides that in case the accused is discharged on examination or acquitted on trial, and the justice certifies on his record that it is just and equitable that the complainant pay the costs, that then the justice shall enter " a judgment for costs against the surety and the complaining witness, either or both of them, which shall be of like force and effect, and shall be collected on execution, as any other judgment rendered by a justice of the peace." 3 Session Laws, 1873, p. 192.

It is seen that this section contemplates collection of the costs from complainants and sureties in a portion of the class of cases where the prosecution fails, and contemplates that the justice and officers properly entrusted with any executions shall be the agencies to effect collection. It is also not unworthy of notice that no provision is here made for getting costs from any source in those cases where the prosecution fails, and either no judgment is given for costs, or if given, is proved to be uncollectible by execution.

We now come to the section relied upon as conferring power on the police justice not merely to collect of the individuals liable therefor the fees specifically incurred before him, but to collect the same in mass with others.

from the county, for the benefit of the city. It is section eight as amended in 1875. Local Acts, 1875, pp. 743, 744. It embraces several distinct regulations.

*First.* It ordains, that all first and all final process issued by the police justice shall be directed to and served by some member of the police force; but that all other writs or process issued by him may be executed by any member of such force or by any constable of the city.

*Second.* That in each case examined, or tried and determined before him for a violation of the charter or of an ordinance or by-law, he shall tax for his services therein $2.50, and for services therein by a member of the police force the further sum of $2.50, and for services by a constable not a member of such force, such fees as are given by law in criminal cases for the like services,—the latter "when collected" to be paid to the constable for "his own use."

*Third.* That in all cases for offenses against the criminal laws of the state and made triable before the police justice, and in all cases examinable · and bailable but not triable before him for alleged violations of the criminal laws of the state, he shall tax for services performed by him therein the same fees as are given by law to justices of the peace for like services; and shall also tax for any services therein by members of the police force such sum or sums as are allowed by law to constables, sheriffs and turnkeys for like services; and for the services of any constable not being a member of such force such fees as are given by law for like services, the latter to "be paid to said constable, when collected, to his own use."

*Fourth.* In all cases commenced before the police justice to recover fines, penalties or forfeitures; and in all cases of offenses against the criminal laws of the state and triable before him, if the defendant pleads guilty or is found guilty on trial, there shall be judgment "for costs accruing in the case," "against and paid by

said defendant, in addition to the fine, penalty, or forfeiture imposed."

*Fifth.* In all cases of examination of offenders by said justice for offenses against the criminal laws of the state, and where he has power only to examine and hold to bail and not to try, the fees given by law for such examination "shall be audited by the board of supervisors of the county of Kent and paid out of the treasury of said county."

*Sixth.* "And in case the costs aforesaid, taxed against the defendant in any sentence imposed by such justice in suits tried and determined by him, for a violation of the criminal laws of this State, shall not be paid by said defendant, the same shall be audited by the board of supervisors aforesaid, and paid out of the treasury of said county."

*Seventh.* "It shall be the duty of said justice to collect such costs and pay the same to the treasurer of said city at the close of each month, taking his receipt therefor (except the costs payable to such constable performing services as aforesaid), and shall report the same to the common council of said city, at its first regular meeting in each month."

By section 15 as amended (Local Acts, 1875, p. 745), the justice is required to report to the common council in writing at the first regular meeting in each month, the names of those brought before him subsequent to the first regular meeting of the preceding month, "for examination or trial, the disposition of each case, and the amount of the fine, penalty, or forfeiture, and the amount of the costs adjudged and imposed in each case separately, and the amount thereof collected; and if no judgment has been rendered or punishment imposed the same shall be stated in said report."

Now the position that the justice is deputed to collect from the county the costs going to the city, is based entirely on the general expression in section eight above quoted under the seventh head, and it would seem too·

plain from the hundred provisions and immediate context to warrant discussion, that the whole purpose was to enjoin upon the justice the duty, closely connected with his office and harmonizing with his range of duties as justice, namely, to collect from individuals all "such costs" as they should be condemned before him to pay; and not to require him to step beyond or outside of his official sphere to exercise an independent and not congruous agency.

It will not escape notice that wherever the language is at all specific in regard to his collecting costs, it points invariably to instances where either the defendant, or the complaining witness and his surety or one of these shall be condemned by the justice to pay the costs and in no instance to cases where the costs are left to be borne exclusively by the county, and under the circumstances this significantly tends to show the sense meant to be conveyed by the passage the relator rests upon.

Again, in such intimate connection with this requirement to collect the costs that it cannot be separated is the command to pay the "same" costs (except those going to constables), to the city treasurer at the close of each month.

It is hence evident that his agency in collecting has exclusive reference to items expected to accrue and become collectible day by day during each month, and up to the "close" of the month; a state of things wholly incompatible with any idea of collection from the county. The construction claimed would necessitate a session of the board of supervisors at some seasonable hour or hours, at or about the close of each month in the year in order to audit and adjust the claims preferred by the justice for the benefit of the city and enable the justice to draw the money and pay it over to the city treasurer. And surely it cannot be seriously urged that the legislature had such action in contemplation. Had it been their will to confer upon this criminal magistrate the power in question and to require these regular and repeated meetings of the board of supervisors year after

year, the intent would not have been left to be gathered from this one general expression, but distinct and explicit terms would have been used to make known not only to the justice and the city, but to the board of supervisors, the extraordinary duties enjoined. Further discussion does not appear to be called for. It seems scarcely necessary to add that it is not intended to question the personal fitness of the gentleman now in the office, and appearing as relator, to be a statutory special agent of the city to make collections of the county. The reasoning is general and does not proceed upon any idea of the actual qualifications of a particular person. The object has been to show that the legislature has not appended to the office of police justice an authority and duty foreign to it, or confided a trust to a given official who could not be presumed a fit and proper object of it.

In my judgment the police act confers no power upon the justice to officiate as agent of the city in making collections of the county as claimed, and that the application for mandamus should be denied.

The other Justices concurred.