COLUMBIA W. P. CO. v. COLUMBIA ELECTRIC &c. CO.

1. STATE AS PARTY IN EQUITY AND AT LAW.—The State of South Carolina, owning the property known as the Columbia Canal, transferred the same to trustees, reserving for the absolute use of the State five hundred horse power of water power, and authorized these trustees to make sale of this property subject to this reserved right.   The trustees for value made such sale to plaintiff.   Afterwards the State made lease of this five hundred horse power to defendant under a contract which required defendant to furnish the State Penitentiary with electric power for its purposes; and the defendant constructed its works and put up a supplemental steam plant

on the adjoining land, the banks of the canal. Plaintiff then brought action against the defendant, to enjoin any use of this water power for purposes other than the supply of State institutions, and to recover damages for the erection of a steam plant on plaintiff's property. The State, by the attorney general, interposed, and suggested these facts, but declined to be made a party, and defendant objected that the State was an indispensable party. The Circuit Judge held that the action could proceed without the State, that the use of the State's water power was absolute, the contract between the defendant and State was valid, and the use of a steam plant was a proper adjunct, but that the canal banks were the property of plaintiff. *Held*, that the State was an indispensable party, so far as the case involved the equitable issue of the injunction, but not as to the legal issue of damages for the erection and use of the steam plant; and that these questions as to party were properly before the court, and the case on the equity side of the court must be dismissed.

2. RESERVATION OF WATER POWER—PROFIT A PRENDRE.—The right of the State to the free use of this five hundred horse power being "absolute," was separable and distinct from ownership in other lands, and constituted a right of *profit a prendre;* and, therefore, the contract between the State and defendant was valid.

3. IBID.—ESSENTIAL ADJUNCT—FACTS IN LAW CASE.—The steam plant was authorized if essential to the enjoyment of the water power, and this being a law question, decided affirmatively by the judge without a demand for a jury trial, or exception contesting his right to pass upon it, this court cannot interfere. And this ruling must also determine the question as to the ownership in fee of the land on which the steam plant was erected. Only result concurred in.

Before HUDSON, J., Richland, October, 1893.

Action by the Columbia Water Power Company against the Columbia Electric Street Railway, Light and Power Company, commenced August 16, 1893, to restrain the defendant from using the 500 horse power of water power, claimed under its contract with the State, in generating power to move its cars, or furnish light, or for any other private purpose, and from erecting any other structures or machinery on the lands described, and to require the removal of its steam plant, and claiming damages. The suggestion filed by the attorney general was as follows:

And now comes the attorney general of the State of South Carolina, and suggests to the court, and gives it to understand

and be informed (appearing only for the purpose of this motion) that the State of South Carolina is not a party to this action, and declines to become a party, or to submit herself in any way to the jurisdiction of her own court.

And the said attorney general doth further suggest and bring to the attention of this honorable court, that the defendant aforesaid is in possession of the strip of land described in the complaint by lease or license from the State of South Carolina, under agreement made between said defendant and the board of directors of the South Carolina Penitentiary, on the 26th day of May, 1892, herewith exhibited to the court, and approved and ratified by an act of the legislature of said State, entitled "An act to ratify and confirm the contract made and entered into by and between the directors of the South Carolina Penitentiary and the Columbia Electric Street Railway, Light and Power Company," &c., approved December 24th, 1892; that the said strip of land was purchased for the use of said penitentiary on October 18, 1866, from Thomas J. Rawls, and confirmed to the uses of said State Penitentiary by an act, entitled "An act to devote certain public lands to the use of the board of directors of the State Penitentiary," approved February 9, 1882; that the power generating works of the defendant corporation are built upon said strip of land, and are now being used in part in supplying power to said State Penitentiary for operating necessary machinery within its walls, under the agreement aforesaid.

And the said attorney general doth further suggest and show to this court, that if the injunction prayed for in the complaint be granted, the defendant will be prevented from carrying out its said agreement with the State of South Carolina, and the said State, without a hearing in the cause, will be deprived of the water power she is entitled to in the manner she has contracted for, and of the revenue she has secured, by and under the said agreement, for the period of thirty years.

Wherefore, without submitting the rights of the government of the State of South Carolina to the jurisdiction of the court, but respectfully insisting that the court has no jurisdiction of the subject in controversy, he asks that the said complaint be

set aside, and all other proceedings in the cause stayed and
dismissed.                                D. A. TOWNSEND,
            Attorney General South Carolina, per Buchanan.

The Circuit decree was as follows:

This cause came on to be heard before me at the present term
of the court, and has been fully argued.   As to the question
raised that the court has no jurisdiction because that the State
is an indispensable party, this plea is overruled.   The court
has jurisdiction.   The defendant is a lessee of the water power
reserved by the State, and the court can construe a contract
made between the defendant and the State, whereby it is claimed
that the rights of the plaintiff have been affected.   The door is
not shut to plaintiff because of the contract with the State; the
State has a right to come in, if she so wishes; but she declares
that she will not come in, and the cause can be heard without
her presence.

As to the Rawls deed, that deed conveys the property to the
State; but subsequently the State conveyed the canal property
to the plaintiff, and thereby conveyed in fee all of the property
known as the "canal property," including its banks, as it ex-
isted at the time of the conveyance; and at the time of the act
of 1887, and of the conveyance made thereunder, the canal
property covered the land upon which the defendant's works
are erected.

Plaintiff acquired its rights under the act of 1887.   It is not
the grantor of anything to the State, but the State has reserved
out of its grant 500 horse power of water power, and that much
plaintiff did not purchase.   The whole question turns on the
reserved right of the State.   The defendant holds a lease from
the State, and the contract made by defendant with the board
of directors of the State Penitentiary, approved and ratified
by the State, has given to the defendant all of the rights which
the State had in that 500 horse power.   In the act of 1887 there
is a distinct reservation of an absolute right to the State of 500
horse power of water power.   Call it an easement, or what you
will, it is absolute.   Now, can the State dispose of it?   Unques-
tionably she can.   She can develop it; she can erect the necessary

buildings for its utilization, and can utilize it.   She may do it in any way she pleases.   She may use old wheels, or she may use new and improved methods, and may resort to electricity, which is now generally regarded as an improved method of transmitting water power;   therefore, there is no objection to the electric plant erected by the defendant under its contract with the State.

Now, can the State lease its power, and permit the lessee to use it, and supply the State at the cost of the lessee?   I think it can.   The State is not always ready for carrying on such work—therefore, she could lease it;   and, in this particular case, the State gets, or may get, 100 horse power, and the lessee the balance.   This being a consideration moving to the lessee, the lessee can devote that consideration to its own use;   therefore, under the act, the defendant, as lessee of the State, has the unquestionable right to put the electric plant on the banks of the canal of the penitentiary, and to carry out the contract which has been made between it and the State of South Carolina.

Now, has the defendant the supplementary right to put in a steam plant?   Prudence and foresight justifies its erection on the banks of a canal along a river where freshets come; and where time is important, there might be serious interruption to the industries of the defendant company, and thus of the penitentiary; therefore, the defendant has a right to use so much steam plant as is necessary to supplement its water power at such times as the water power is unavailable by reason of freshets or necessary repairs to the canal, or other causes.   The dam may break, rains may swell the river, and there might be a long interruption to the use of the water power, and it would be necessary to resort to the steam plant to carry on the work. It is common to use steam as an adjunct to water power plants. The defendant cannot erect any more steam plant than is necessary for it to use as a supplement to the water power which it has received from the State.

I, therefore, hold that there has been no violation of the State's contract with the plaintiff; that reservation of the State's water power is a part of the contract made with the plaintiff, and that reservation is absolute.   Therefore, I hold

that the complaint must be dismissed.   It is, therefore, ordered and adjudged, that the complaint be dismissed.

The plaintiff appealed, alleging error as follows:

Excepts because his honor, the presiding judge, erred in holding: 1. That there is a valid lease of the water power reserved by the State.   2. That a valid contract was made between the defendant and the State.   3. That all of plaintiff's rights were acquired under the act of 1887.   4. That defendant is the lessee of a valid lease from the State.   5. That the contract made by defendant with the board of directors of the State Penitentiary, approved and ratified by the General Assembly, has given to the defendant all of the rights which the State had in the 500 horse power of water power.   6. That in the act of 1887 there is a distinct reservation to the State of a right of 500 horse power of water power—"call it an easement or what you will"—absolute in the sense and with the force and effect in which that term is apprehended in the decision.   7. That the State can dispose of its right to the 500 horse power of water power in any way the State pleases.   8. That there is no objection to the electric plant erected by the defendant, and the reasons given for this conclusion.   9. That the State can lease its power, and permit the lessee to use it, and supply the State at the cost of the lessee, and the reasons given for this conclusion. 10.  That the lessee can devote what is styled the consideration moving to the lessee, to wit: the balance of the horse power after what of it the State gets, to its own use, and the conclusion drawn therefrom that defendant as lessee of the State has the unquestionable right to put the electric plant on the banks of the canal at the penitentiary, and to carry out the contract which had been made between it and the State, as if it were a valid contract.   11. That the defendant has a supplementary right to put in a steam plant on the plaintiff's canal property. 12. That defendant has a right to erect on plaintiff's canal property, and use, so much steam plant as is necessary to supplement defendant's water power, at such times as the water power is for any cause unavailable, and the reasons given for this conclusion.   13. That there has been no violation of the

State's contract with the plaintiff. 14. That it is a part of the contract of the State with plaintiff, that the reservation of the State's water power is absolute in the sense and with the force and effect in which that term is apprehended in the decision. 15. That the complaint must be dismissed. 16. That his honor erred in ordering and adjudging that the complaint be dismissed.

Excepts because his honor did not decide: 17. In clear and distinct terms, that the plaintiff is the owner in fee of all that strip of land lying between the southern line of Plain street on the south, and the southern line of Blanding street on the north, and between the eastern bank of the Columbia Canal and the Congaree River, including the bank of said river, as portion of its canal property. 18. That the plaintiff has the sole and exclusive right, franchise, and privilege to sell and lease water power developed by the Columbia Canal. 19. That the plaintiff, on and from the        day of March, 1892, was, and ever since has been, and is, ready to furnish to the State the 500 horse power of water power, in accordance with A. A. December 24th, 1887, and that the State and the board of directors of the South Carolina Penitentiary have been, since the said        day of March, 1892, informed of and aware of the same. 20. The matters alleged in paragraph 10 of the complaint as there alleged. 21. That the A. A. December 24th, 1892, mentioned in the 6th paragraph of the complaint, is in violation of section 10, article 1, Constitution of the United States, declaring that no State shall pass any law impairing the obligation of contracts, in this, that it impairs the contract made by the State in the A. A. December 24th, 1887, as to the rights, franchises, and privileges of the owners of the property known as the Columbia Canal, and the lands held therewith, as owners in fee thereof, and more especially as to the sole and exclusive right, franchise, and privilege to sell and lease the water power developed by said canal. 22. That the defendant should be confined, at most, to such plant and work as were constructed and done in accordance with the specifications and plans submitted by defendant to, and approved by, plaintiff. 23. That the erection of the steam plant, and the entire ma-

chinery thereof, by defendant, was in utter violation of the property rights of plaintiff. 24. The matter alleged in paragraph 15 of the complaint as there alleged. 25. That the 500 horse power of water power to which the State is entitled under A. A. December 24th, 1887, belongs to the State, as State, for the use of the South Carolina Penitentiary, for State public purposes exclusively, is attached to, and not severable from, the State, as State, for the use of the penitentiary, and to be used for said purposes, and said purposes only. 26. That all claims based on any severance, or attempted severance, of the right to said 500 horse power of water power from the State for the use of the penitentiary for said purposes, by the person in whose favor said severance is made, or attempted to be made, are invalid in law. 27. That the canal property, on said severance being made, or attempted to be made, is, as matter of law, released from the servitude or easement imposed on it as the servient tenement by the A. A. of December 24th, 1887, or otherwise. 28. That the plaintiff has complied with all the obligations in the premises to which it was subjected by the A. A. of December 24th, 1887, or otherwise. 29. That his honor erred in not granting a perpetual injunction, restraining defendant from using, or attempting to use, the 500 horse power of water power for the purposes of generating power to apply to the movements of its cars upon the street railway, for lighting its lamps or furnishing power motors or any other private purpose. 30. In not granting an injunction to enjoin and restrain defendant from entering upon and erecting on the lands or property of plaintiff any structures, buildings, works or machinery, save as is in accordance with the plans and specifications submitted by defendant and approved by plaintiff. 31. In not requiring defendant to remove from the lands and property of plaintiff all of defendant's structures covering the steam engine, boilers, and coal, and its steam engine and all machinery and property connected therewith. 32. In not ordering an assessment of the damages done by defendant to plaintiff in the premises, and adjudging plaintiff's right to have said damages. 33. In not retaining the complaint.

11—48

*Messrs. Abney & Thomas* and *Bachman & Youmans,* for appellant.

*Messrs. Lyles & Muller, John T. Sloan, jr.,* and *R. W. Shand,* contra.

February 18, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY.    The view which the court takes of this case renders it unnecessary to trace the history of the Columbia Canal prior to the year 1887, when the act was passed entitled "An act to incorporate the board of trustees of the Columbia Canal, to transfer to the said board the Columbia Canal, with the lands now held therewith, and its appurtenances, and to develop the same," the first and seventh sections of which are as follows:

Section 1.  "That the board of directors of the South Carolina Penitentiary are hereby authorized, empowered, and required to transfer, assign, and release to the board of trustees of the Columbia Canal, hereinafter created and provided for, the property known as the Columbia Canal, together with the lands now held therewith, acquired under the acts of the General Assembly of this State with reference thereto, or otherwise, all and singular the rights, members, and appurtenances thereto belonging; and upon such transfer, assignment, and release, all the right, title, and interest of the State of South Carolina in and to the said Columbia Canal, and the lands now held therewith, from its source at Bull's Sluice, through its whole length to the point where it empties into the Congaree River, together with all the appurtenances thereto belonging, shall vest in the said board of trustees for the use and benefit of the city of Columbia, for the purposes hereinafter in this act mentioned, subject, nevertheless, to the performance of the conditions and limitations prescribed on the part of the said board of trustees and their assigns.    *    *    *"

Section 7.  "That the board of trustees shall, within two years from the ratification of this act, complete the said canal so as to carry a body of water,    *    *    *    and furnish to the State, free of charge, on the line of the canal, 500 horse power of water power, to Sullivan Fenner, or assigns, 500 horse power of water

power, under his contract with the canal commission, and to furnish the city of Columbia 500 horse power of water power at any point between the source of the canal and Gervais street the city may select; and shall, as soon as is practicable, complete the canal down to the Congaree River, a few yards above the mouth of Rocky Branch: *Provided*, that the right of the State to the free use of the 500 horse power shall be absolute, and any mortgage, assignment, or transfer of the said canal by the said board of trustees, or their assigns, shall always be subject to this right."

In pursuance of said act, the board of directors of the South Carolina Penitentiary, on the first day of February, 1888, did transfer, assign, and release unto the said board of trustees of the Columbia Canal, their successors and assigns, all the right, title, and interest of the State of South Carolina in and to the said Columbia Canal, and all the lands held therewith, in the terms and words of said act, and upon the conditions therein stated. The board of trustees of the Columbia Canal thereupon took possession of the canal and the property connected therewith. At the time of the passage of the act of 1887, the State, through the directors of the penitentiary, was in possession of the property, which included the strip of land upon which the water power plant and steam plant were erected. In 1890, an act was passed, which authorized the board of trustees of the Columbia Canal to sell said property subject to all the duties and liabilities imposed by the act of 1887. The plaintiff holds under a deed made by the board of trustees of the Columbia Canal under the above mentioned act.

On the 26th day of May, 1892, the State, through the directors of the penitentiary, and the defendant entered into a, contract, by which the State agreed to allow the defendant the free and uninterrupted use of the said 500 horse power of water power reserved by the State for the use of the penitentiary, saving and excepting the 100 horse power of water power reserved to the penitentiary, as stated in said contract. For the use of said 500 horse power of water power, the defendant covenanted and agreed to pay to the State $2,500 per annum for the time therein specified. In 1892, this contract was ratified

by the legislature by an act entitled "An act to ratify and confirm the contract made and entered into by and between the board of directors of the South Carolina Penitentiary and the Columbia Electric Street Railway, Light and Power Company, for the development of the 500 horse power of water power reserved by the State of South Carolina for the use of the South Carolina Penitentiary along the line of the Columbia Canal."

The case came on for a hearing before his honor, J. H. Hudson, presiding judge, at the October (1893) term of court for Richland County. Upon the pleadings being read, O. W. Buchanan, Esq., assistant attorney general of South Carolina, read the suggestion, which will be incorporated in the report of the case, signed by D. A. Townsend, Esq., attorney general of South Carolina, articles of agreement between W. J. Talbert, superintendent of the South Carolina Penitentiary, and the defendant, dated 26th May, 1892; deed of conveyance of realty from T. J. Rawls to the State of South Carolina, dated October 18th, 1866; and he further read A. A. September 21st, 1866, 13 Stat., 366; A. A. February 9th, 1882, 17 Stat., 873; and A. A. December 24th, 1892, 21 Stat., 94. The assistant attorney general moved that the suggestion, articles of agreement, and deed from Rawls to the State, above mentioned, be filed. He stated that he appeared for the purpose of this motion only, and refused to move that the State be made a party to the action, or to consent thereto. The presiding judge ordered that the motion to file be granted. Defendant's attorneys then objected to the jurisdiction of the court on the grounds: 1. That the cause could not proceed without the State being made a party. 2. That the State is an indispensable party. 3. That the State cannot be made a party. The presiding judge stated that he would hear further argument on the question of jurisdiction after the testimony was heard, in the general argument of the case; and ordered that the testimony be proceeded with.

After the testimony was closed and argument heard by the presiding judge, he rendered his decree, which, along with plaintiff's exceptions thereto, will be set forth in the report of the case. The defendant, in accordance with the proper practice, gave notice that it would endeavor to support the judg-

ment of the court below upon the two additional grounds: 1st. "Because he held that the State of South Carolina was not an indispensable party to said cause, and that the court could proceed to judgment therein without the presence of the State as a party to said cause." 2d. "Because he held that the State was seized in fee of the land upon which the works were erected by defendant."

The complaint alleges two causes of action: one for injunction on the equity side of the court, the other alleging title in the plaintiff, and claiming damages for alleged injuries by reason of unlawful entry upon its land and the erection of a steam plant in connection with the water power plant. *Heyward* v. *Farmers' Mining Co.*, 42 S. C., 138. In the consideration of this case it must be borne in mind that there is a difference where the action is, in effect, a suit against the State, and where the State is an indispensable party. This distinction is mentioned in the case of *In re Ayers*, 123 U. S., at page 500, where it is said: "But the very ground on which it was adjudged not to be a suit against the State, and not to be one in which the State was a necessary party, was that the defendants, personally and individually, were wrong doers, against whom the complainants had a clear right of action for the recovery of the property taken, or its value, and that, therefore, it was a case in which no other parties were necessary." Section 143 of the Code shows who are indispensable parties; it provides that "the court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be brought in."

In Foster's Federal Practice it is shown that a different rule prevails as to parties in equitable actions and those on the law side of the court. That author, in section 37, p. 76, says: "In actions at law * * * where an individual is sued as for injuries to persons or property, real or personal, * * * the government does not stand behind him to defend him. If he has the authority of law to sustain him in what he has done,

like any other defendant, he must show it to the court, and abide the result. In either case the State is not bound by the judgment of the court, and, generally, its rights remain unaffected. It is no answer for the defendant to say, I am an officer of the government and acted under its authority, unless he shows the sufficiency of that authority. Courts of Equity proceed upon different principles as to parties. In accordance with these views, it was held in the case from which the foregoing extracts are taken, that a suit by a bondholder against the officers of a State, and a railroad company whose bonds he held, to have a sale of mortgaged property to the governor of Georgia, claiming to act in his individual capacity, declared void upon the ground 'that the governor was not authorized to bid in said property for the State, and the State had no constitutional power to make the purchase,' could not be maintained."

One of the objects of the plaintiff's action herein is to have declared null and void the contract between the State and the defendant, as to the 500 horse power of water power, on the ground that the State could not lease the same. The case of *Cunningham* v. *Macon & Brunswick R. R. Co.*, 109 U. S., 446, shows that the State is an indispensable party, and if she refuses to become a party, the action will be dismissed for want of jurisdiction. In that case the court says: "This principle is conceded in all the cases, and whenever it can be clearly seen that the State is an indispensable party, to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction." Again: "As was said in *Barney* v. *Baltimore*, 6 Wall., 280, there are persons who are merely formal parties without real interest, and there are those who have an interest in the suit, but which will not be injured by the relief sought, and there are those whose interest in the subject-matter of the suit renders them indispensable as parties to it. Of this latter class, the court said, in the case of *Shields* v. *Barrow*, 17 How., 130: 'They are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest, or leaving the controversy in such a condition

that its final disposition may be wholly inconsistent with equity and good conscience.' " "In such cases," says the court in *Barney* v. *Baltimore*, 6 Wall., 280, "the court will refuse to entertain the suit when these parties cannot be subjected to its jurisdiction."

The complaint and the suggestion filed by the attorney general show that the State has interests which would be affected by granting the relief prayed for in the complaint. To grant such relief would have the effect of clogging the wheels of one of the branches of the State government, to wit: its penitentiary. In the case of *Hagood* v. *Southern*, 117 U. S., at p. 71, the court says: "The defendants in the present cases, though officers of the State, are not authorized to enter its appearance to the suits and defend for it in its name. The complainants are not entitled to compel its appearance, for the State cannot be sued without its consent. And the court cannot proceed to the determination of a cause and controversy, to which the State is an indispensable party, without its presence. * * * The suggestion that it has had the opportunity and the invitation to appear is immaterial, for it has a constitutional right to insist on its immunity from suit." It clearly appears that the State is an indispensable party.

It is urged, however, that the objection is not properly interposed. This objection is jurisdictional in its nature, and in the case of *Lowry* v. *Thompson*, 25 S. C., 419, the Supreme Court, of its own motion, raised such objection, which was sustained. The State being an indispensable party, and refusing to become a party, the cause of action on the equity side of the court cannot be sustained.

We come now to a consideration of the cause of action on the law side of the court. The first question to be disposed of is whether or not the State is an indispensable party to this action.

In the case of *Lowry* v. *Thompson*, 25 S. C., 416, Mr. Justice McIver, speaking for the court, in an exceedingly clear opinion, says: "It will be necessary, first, to dispose of the question of jurisdiction; for if it shall be determined that the court has no jurisdiction, then it would be not only unnecessary but improper to undertake to decide any of the other questions in the

case.   That a State can not be sued in any of its courts without its express consent, is a proposition so universally conceded as to render any argument or authority to support it wholly unnecessary.   If, however, authority should be asked for, it will be found in almost every case which will be hereinafter cited, where it will be found that the proposition has either been distinctly decided or expressly recognized, and we are not aware of any authority to the contrary.   As it is not pretended that any such consent was given in this case, the first inquiry is whether this is really an action against the State?   The fact that the State is not named as a party to the record is not conclusive of this inquiry; though, at one time, it seems to have been so held in the case of *Osborn* v. *United States Bank*, 9 Wheat., 738, followed by *Davis* v. *Gray*, 16 Wall, 203; but these cases, so far as this particular point is concerned, are entirely inconsistent with the more recent decisions of the Supreme Court of the United States, where the rule seems to be now well settled, that an action, though in form against an officer of a State, if it is in fact a suit against the State itself, can not be maintained even though the State is not made a party on the record.   *Louisiana* v. *Jumel*, 107 U. S., 711; *Cunningham* v. *Macon & Brunswick R. R. Co.*, 109 *Id.*, 446; *Hagood* v. *Southern*, 117 *Id.*, 52.   \* \* \*

"In *Cunningham* v. *Macon & Brunswick R. R. Co.*, *supra*, Mr. Justice Miller reviews this whole subject, and admits that it is not an easy matter to reconcile the various decisions of the Supreme Court of the United States upon the subject; and while disavowing any attempt to do so, he proceeds to deduce from them certain general principles.   \* \* \*   '1. It has been held in a class of cases where property of the State, or property in which the State has an interest, comes before the court and under its control in the regular course of judicial administration, without being forcibly taken from the possession of the government, the court will proceed to discharge its duty in regard to that property.   And the State, if it chooses to come in as plaintiff, as in prize cases, or to intervene in other cases when she may have a lien or other claim on the property, will be permitted to do so, but subject to the rule that her rights will receive the same

consideration as any other party interested in the matter, and be subjected in like manner to the judgment of the court. Of this class are the cases of *The Siren*, 7 Wall., 152, 157, *The Davis*, 10 *Id.*, 15, 20, and *Clark* v. *Barnard*, 108 U. S., 436. * * * 2. Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defence is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defence he must show that his authority was sufficient in law to protect him.' The somewhat famous case of *United States* v. *Lee*, 106 U. S., 196, is cited as belonging to this class, and to it we may add the subsequent case of *Poindexter* v. *Greenhow*, 114 U. S., 270. '3. A third class, which has given rise to more controversy, is where the law has imposed upon an officer of the government a well defined duty in regard to a specific matter not affecting the general powers or functions of the government, but in the performance of which one or more individuals have a distinct interest, capable of enforcement by judicial process.' "

The defendant is sued for damages growing out of alleged injuries to plaintiff's property, and the case falls within the rule laid down under the second head *supra*, and, therefore, the State is not an indispensable party. This conclusion is in harmony with the principles enunciated in the case of *Pennoyer* v. *McConnaught*, 140 U. S., 1, in which the leading authorities on this subject are referred to.

Having reached the conclusion that the State is not an indispensable party in determining this cause of action, the next question for consideration is, whether or not the contract between the State and the defendant, relative to the 500 horse power of water power, is null and void. This contract received legislative construction when it was ratified by the act of the legislature hereinbefore mentioned, and although such construction is not binding on this court, still it shows the intention of the State when it reserved the 500 horse power of water power. We think the construction placed upon

said contract in 1892 by the legislature as to the 500 horse power reserved to the State, was in harmony with the terms of said contract—the proviso to section 7 of the act of 1887 being that the right of the State to the free use of the said 500 horse power should be *absolute.* The use of the word "absolute" was for the purpose of creating a right in the State to this 500 horse power, separable and distinct from ownership in other lands, and not dependent upon any particular lands to which it may be appurtenant. This reservation was a right of *profit a prendre.*

Campbell, C. J., in delivering the opinion of the court in *Hall* v. *City of Ionia et al.,* 38 Mich., 423, says: "There is no foundation for the claim that a right to the perpetual use of water must be dependent upon a particular estate with which it is connected. Some confusion has, perhaps, been caused by an attempt among writers to create symmetry in the law, by putting all rights connected with land, or springing from them, into classes, and by speaking of these particular rights as easements, which very commonly requires both a dominant and servient estate. But every right of property must usually have some peculiar qualities of its own, which must not be destroyed by inappropriate attempts to classify it with different kinds; the old maxim, *omnis definitio periculosa,* is especially true when things of essentially different qualities are placed together under one head. The value of water as a distinct inheritance, either for creating power or for other purposes of use or consumption, has been recognized in all periods, and its ownership is well established as not dependent on lands to which it may be appurtenant, but as having a separate and intrinsic importance. There may be an occasional *dictum,* and possibly some decisions to the contrary; but most cases, where any doubt seems raised on this question, will be found to rest on peculiar facts which in no way involved the general doctrine. The facts are often such as to confine the use of water, not only to special places, but also to specified purposes. But this limited use is the exception, and not the rule," citing a number of authorities. Proceeding, he says: "Experience has shown that, in many instances, the right to use and dispose of water may not only be more valuable than any land which is occupied for its gath-

ering and disposal, but it is, also, of special value to be taken to a distance, and parcelled out among several users or occupants. Water works are only made available by the sale of water to consumers, and valuable water power is frequently distributed among several mills in large and small quantities, and may not be used by the owner at all. The ownership of it cannot be confined to the right in the nature of a license, and is as well recognized a title or interest of a real nature as land itself, without some use of which it could not be made available.''

Foster, J., in speaking for the court in *Goodrich* v. *Burbank*, 12 Allen, 459, uses this language: ''The water itself may not be the subject of property, but the right to take it and to have pipes laid in the soil of another for that purpose, and to enter upon the land of another to lay, repair, and renew such pipes, is an interest in the realty, assignable, descendible, and divisible. On this subject the language of Judge Curtis is as follows: 'I know of no rule of the common law which prohibits grants of the incorporeal right to divert water from being made in gross. If I have a spring, I may sell the right to take water from it by the pipes to one who does not own the land across which the pipes are to be carried, and I may either restrict the use to a particular house, or not, as I please. It is true, the grantee cannot make the grant useful without acquiring from the owner of the intermediate land the right to lay pipes therein, nor can he use the water in a house until he obtains the right to possess that house. But these may be required afterwards. Incorporeal rights may be inseparably annexed to a particular messuage or tract of land, by the grant which creates them, and makes them incapable of separate existence. But they may also be granted in gross, and afterwards, for purposes of enjoyment, be annexed to a messuage or land, and again severed therefrom by a conveyance of the messuage or land, without the right, or a conveyance of the right without the land.' *Lonsdale Co.* v. *Moies*, 21 Law Rep., 664.  *  *  * We are unable to distinguish between the right to take water by a canal from a pond for the purpose of power, and the right to take it from a spring in a pipe for domestic purposes, the

watering of cattle,. or to supply an artificial jet or fountain, and to sell it to others for any uses they may desire to make of it.''

The following authorities will also throw light upon this subject: *Tinicum Fishing Co.* v. *Carter*, 61 Penn. St., 39; 19 Am. & Eng. Enc. Law, 259; Gould on Waters, section 299, p. 562; *Poull* v. *Mockley*, 33 Wisc., 482; Washburn's Easements & Servitudes, sections 12, 12*a;* Angell on Watercourses, section 143. We are of opinion that the contract between the State and the defendant was not null and void.

It is contended that said contract did not confer upon the defendant the right to erect the steam plant. This depended upon the fact whether it was merely incidental to, and essential to, the enjoyment of the use of the water power plant. The parties of the action had the right of trial by jury as to the legal issues raised by the pleadings, but neither a demand was made therefor on Circuit, nor is there an exception raising such question. This court must assume that the Circuit Judge properly decided all questions of fact upon which his judgment had necessarily to rest. Even if there was error on his part in his findings of fact, it is not the subject of review by this court in a law case. This court, therefore, can not review the testimony for the purpose of determining whether or not the steam plant was merely incidental to the water power plant, and essential to the enjoyment of its use. For the same reason we can not review his honor's finding of fact, in effect, that the plaintiff is owner in fee of the land described in the complaint, subject to the right of the State to the 500 horse power of water power.

These views render it unnecessary to decide specifically the other exceptions herein.

It is the judgment of this court, that, for the reasons herein set forth, the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER. I concur in the result, as I am not satisfied that the plaintiff ever acquired a title to *the land* upon which the works in question have been erected, for this does not depend solely upon the solution of a question of fact, as seems to be supposed.

MR. JUSTICE POPE concurred in the result.