BROPHY v. SCHINDLER.

1. MANDAMUS—TOWNSHIPS—ROADS AND BRIDGES—ORDER TO RE-BUILD—INTEREST OF RELATOR.

In *mandamus* to compel township officers to rebuild a certain bridge, which had been maintained for 40 years, where the river over which the bridge was built divided the farms of some of the petitioners, and some of them lived on the opposite side of the river from the school-house, thus requiring their children to go a considerable distance out of their way to get to school, such petitioners had sufficient interest to maintain the proceeding.

2. SAME—RELIEF SOUGHT—DEFINITENESS.

Where two adjoining townships disputed as to which one should rebuild a bridge on the dividing highway, a petition in *mandamus* against the officers of each township, praying that either one or the other of the townships, or both, be compelled to build the bridge, was not defective as too indefinite.

3. SAME—DISPUTED RIGHTS—UNWARRANTED DEFENSE.

An unwarranted contention by the officers of a township, whose duty it is to maintain in repair a certain bridge, that another township should share in the expense, does not, on the theory that *mandamus* will only issue where the duty sought to be enforced is clear and undisputed, render *mandamus* an inappropriate remedy to compel such official action.

4. TOWNSHIPS—TOWN-LINE ROAD — MAINTENANCE—ALLOTMENT—IRREGULARITIES—LONG USAGE—RATIFICATION.

Where an allotment of a town-line highway, as made by the highway commissioners of the two adjacent townships, has been acted upon for a long period of time, such action of the commissioners, though possibly irregular in the first instance

because of their not meeting pursuant to notice, will be held to have been ratified by the townships.

5. SAME—STATUTES—REPEAL.

Rev. Stat. 1846, chap. 25, § 17, relating to the allotment of town-line highways by the commissioners of the adjacent townships, was not repealed by Act No. 164, Sess. Laws 1857, covering like subject-matter, and providing for the repeal of contravening acts, but containing no reference to the allotment of highways theretofore laid out.

6. SAME—BRIDGES—REBUILDING—NECESSITY.

An objection to *mandamus* to compel a township to rebuild a certain bridge, on the ground that the court has no power to compel the construction of a bridge against the determination of the local authorities as to its necessity, is without force, where the original bridge was maintained by the township for many years pursuant to a determination by the proper authorities, and no proceedings have been taken to discontinue the highway of which it formed a part.

*Certiorari* to St. Clair; Whipple, J. Submitted December 4, 1900. Decided April 25, 1901.

*Mandamus* by Wesley W. Brophy and others against John Schindler, Timothy O'Donnell, and others, being, respectively, the highway commissioners of Casco and Columbus townships, and the members of the township boards of such townships, to compel the rebuilding of a town-line bridge. From an order granting the writ as to the respondent officers of Casco township, such respondents bring *certiorari*. Affirmed.

*Joseph Walsh*, for relators.

*John B. McIlwain* and *A. E. Chadwick*, for appellants.

*Avery Brothers*, for respondent officers of Columbus township.

MOORE, J. The relators filed a petition for a writ of *mandamus* in the St. Clair circuit court against the respondents and appellants the highway commissioner

and township board of the township of Casco to compel them to build a bridge on the town line between the townships of Casco and Columbus. The respondents filed a demurrer to the petition. The relators then filed an amended petition against the same officers of Casco and the highway commissioner and township board of Columbus, alleging a duty on the part of one or both of said townships to build the bridge, asking the court to determine where the duty exists, and to enforce the same by *mandamus*. Each of the respondents filed an answer to said petition. The respondent Columbus denied any duty on its part to build the bridge, claiming it became the duty of Casco to maintain the bridge under an allotment entered into between the townships of Casco and Columbus in the year 1857. The respondent Casco filed an answer, claiming all benefit of the demurrer interposed to the original petition; denying any duty on its part to solely maintain the bridge; alleging, if any agreement exists, it was never lawfully executed, and has been repudiated by Casco for upwards of 40 years; and that the cost of constructing a suitable bridge will be upwards of $1,500, and no provision has been made for the expense thereof; and also filed a reply answer to the answer of Columbus, setting up that the only agreement signed by the commissioners of Casco was one making it the joint duty of both townships to build and maintain the bridge, and that the agreement set up by Columbus is false, fraudulent, and void. The relators then asked that issues might be framed. Respondent Casco objected to the framing of any issue. These objections were overruled. Issues of fact were then framed. The case was tried by the court without a jury. A reference to the accompanying plat will help to understand the situation.[1] The trial judge found that a public highway had existed between the two townships for more than 40 years; that prior to 1884 a bridge had been maintained on said highway across Belle river, and that said highway was an important traveled high-

_____
[1] See next page.

way from 1857 to 1884, when the bridge became unfit for travel. A dispute arose between the two towns as to

whose duty it was to rebuild it. He also found the following agreement was made:

"*Resolved*, by the commissioners of highways of Columbus and Casco that the public highway on the line of said townships running east and west between said townships shall be districted as follows, to wit: The township of Casco shall keep in repair the first half mile of said highway, commencing at the northeast corner of section No. 1 of Casco, running west to the quarter post of section 1 of Casco. The township of Columbus to take one-half mile commencing at the said quarter post of section No. 1 of Casco and thirty-six of Columbus, running west to corner of said section one (1) and thirty-six (36). The town-

ship of Casco to take one-half mile ˙ commencing at the
northeast corner of section two (2) of Casco, running
west on said township line to the quarter post of said sec-
tion two (2).   The township of Columbus to take one-half
mile from said quarter post to the northwest corner of
section two (2) and the southwest corner of section thirty-
five (35).   The township of Columbus agrees to take one-
half mile commencing at the southeast corner of the west
half of southeast quarter of section thirty-two (32) of
Columbus, running west one-half mile.   The township of
Casco to take all of the remainder of the said highway on
said line.

"It is further understood by the said commissioners of
highways that Casco shall build said bridge over Belle
river at or near Robert Wilson's where the said road on
said line crosses Belle river.   The said township of Colum-
bus agrees to apply all of the nonresident highway money
in said road district number twelve (12) of Columbus to
the building of said bridge: *Provided,* the said nonresi-
dent highway money does not exceed one-half of the ex-
pense of the building of said bridge.

"It is further agreed that Casco shall assume the re-
pair of said bridge at all times.   The above money of
Columbus to be drawn from the treasurer of Columbus by
the highway commissioners of Casco.

"Given under our hands this 11th day of May, A. D.
1857.

"HENRY S. WHEELER,
"ROCHESTER TAPPAN,
        "Commissioners of Casco.
"MICHAEL DUCHENE,
"SHUBAL BULLOCK,
        "Commissioners of Columbus."

The court found that the agreement was a lawful agree-
ment, duly entered into, and that it had been observed
from 1857 until about 1884 by each of the townships.

The court says:

"It does not appear that the three highway commis-
sioners of each town met pursuant to any notice calling a
meeting of such commissioners for the purpose of allotting
the highway between the towns of Columbus and Casco,
but it does appear that on May 11, 1857, the agreement
set out in the answer of Columbus was entered into by

four of the commissioners, two from each town; that the same was signed by them on that day, and afterwards entered at large on the town record of each town; and that such agreement has been carried out by each town until since the bridge was destroyed, in 1884, when Casco repudiated its liability under it. Columbus had never ceased to claim under it, and still claims said agreement is in force. It also appears by an entry in the town record of Casco that April 4, 1898, the electors of that town instructed the town board 'to by all means break or set aside the old agreement made by the commissioners of Casco and Columbus about the building of and keeping in repair the bridge over Belle river on the line aforesaid.' My conclusion from the foregoing is that the town of Casco ratified the agreement of May 11, 1857, and that it was and is of binding force."

The court also found that a bridge could be built over the river at this point for less than $1,000; and that, in addition to the interest which the general public have in the rebuilding of this bridge, relators have an individual and special interest, which authorizes them to file the petition. The court directed that a *mandamus* issue compelling the township of Casco to build the bridge. A motion for a new trial was made by Casco, asking leave to place in the record a certified copy of an allotment made in 1837 of this same town line, by which both townships assumed the burden of maintaining this bridge, and for a rehearing thereon, which was denied solely because the matters involved in the motion were deemed immaterial; and respondent then filed written exceptions. The respondent Casco has brought the case to this court by writ of *certiorari*.

Respondent contends:

"This proceeding should have been instituted by the prosecuting attorney. 13 Enc. Pl. & Prac. 627. The general rule is that a private individual can apply for a writ of *mandamus* only in a case where he has some private or particular interest to be subserved, or some particular right to be preserved or protected, by the aid of this process, independent of that which he holds in common with the public at large; and it is for the public officers

exclusively to apply where the public rights are to be sub-
served,"—citing *People* v. *Inspectors & Agent of State
Prison,* 4 Mich. 187; *People* v. *Green,* 29 Mich. 121;
*Loomis* v. *Rogers Township Board,* 53 Mich. 135 (18
N. W. 596); *Locke* v. *Wayne Circuit Judge,* 62 Mich.
408 (28 N. W. 917); *Sterling* v. *Regents of Univer-
sity of Michigan,* 110 Mich. 369 (68 N. W. 253, 34 L.
R. A. 150); *People* v. *Regents of University of Mich-
igan,* 4 Mich. 98; *People* v. *Supervisors of Kent Co.,*
38 Mich. 424; *People* v. *Board of State Auditors,*
42 Mich. 422 (4 N. W. 274); *Smith* v. *Mayor, etc., of
Saginaw,* 81 Mich. 123 (45 N. W. 964).

The respondent contends the petition for *mandamus* is
not sufficient to confer jurisdiction upon the court for
three reasons:

1. The relators, being private individuals, did not show
any special interest other than that in common with the
public.

2. The petition does not allege that any provision has
been made for the expense for such a bridge.

3. The petition alleges the duty to build the bridge in
the alternative, as either the duty of Casco or Columbus,
or both, and therefore does not point out any clear, legal
duty resting upon Casco, enforceable by *mandamus.*

In 2 Stevens, Mich. Prac. § 459, it is said:

"A private individual can properly apply for a writ of
*mandamus* only in a case where he has some private or
particular interest to be subserved, or some particular
right to be protected, by the aid of that process, inde-
pendent of that which he holds in common with the public
at large. The rule which rejects the intervention of pri-
vate complainants against public grievances is, however,
one of discretion, and not of law."

In this case it is shown that at least some of the relators
suffer not only in common with the general public, but
that they suffer special injury because of the neglect to
rebuild this bridge, and that they have a special interest
in its construction. This bridge is part of a public high-
way which has been in existence more than 40 years.
No part of the highway has ever been vacated. The river
over which this bridge was constructed divides the farms

of some of the petitioners, so that, to go to his work, the farmer has to travel a long distance. Some of the petitioners live on one side of the river, while the school-house to which they send their children is on the other side of the river. To get the children to school, it is necessary either to use a boat, or to travel much farther than it is practicable for them to do in all kinds of weather. We think the petitioners have shown such an interest as entitled them to file this petition. See *Giddings* v. *Secretary of State*, 93 Mich. 4 (52 N. W. 944, 16 L. R. A. 402), where some of the cases are reviewed.

It is claimed the petition is not sufficiently definite, as it prays that the authorities of the township of Casco or of Columbus, or both, be compelled to build the bridge. We think there is no force in this contention. It is claimed, not only that there is no obligation to build the bridge, but the township of Columbus claims, because of its agreement with Casco, it is not bound to pay any portion of the expense, while the latter township claims Columbus should bear half the expense. The petition was framed to meet these conflicting claims, and to have the court pass upon them. The petition is not faulty for want of definiteness. *East Jordan Lumber Co.* v. *Village of East Jordan*, 100 Mich. 204 (58 N. W. 1012).

It is said *mandamus* issues only to compel the recognition of a clear, legal right, or the performance of a clear, legal duty, and will not issue where the right or duty is disputed or doubtful; citing 13 Enc. Pl. & Prac. 496; *People* v. *Branch Circuit Judges*, 1 Doug. 319; *People* v. *Wayne Circuit Judge*, 19 Mich. 296; *Pack* v. *Supervisors of Presque Isle Co.*, 36 Mich. 377; *Loomis* v. *Rogers Township Board*, 53 Mich. 135 (18 N. W. 596); *Post* v. *Sparta Township Board*, 63 Mich. 323 (29 N. W. 721); *Van Akin* v. *Dunn*, 117 Mich. 421 (75 N. W. 938). Counsel do not suggest what remedy is open to the relators if *mandamus* is not the proper remedy. In 2 Stevens, Mich. Prac. § 458, it is said:

"Where the right is clear and specific, and public officers or tribunals refuse to comply with their duty, *mandamus* issues to enforce the specific relief. It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of the writ. Courts of law, which issue this writ, do not, in deciding such questions, take into account remedies in equity. Such remedies may affect the exercise of discretion in allowing the writ, but they cannot affect the jurisdiction."

In this case we think it has been made clearly to appear that it is the duty of the township of Casco to build and maintain this bridge. Its officers have refused to do so. It is a proper case in which to compel relief by writ of *mandamus*.

It is said that, as the record does not show the commissioners met pursuant to any notice calling a meeting for the purpose of allotting the highway, the allotment is illegal and void; citing *People* v. *Nankin Highway Com'rs*, 14 Mich. 528; *People* v. *Caledonia Highway Com'rs*, 16 Mich. 63; *Township of Taymouth* v. *Koehler*, 35 Mich. 22. The first two of these cases were cases where the highway had been discontinued, and proceedings at once instituted to question the validity of the discontinuance. In the other case the validity of a contract to build a bridge was involved. In the last-named case it is said:

"While, therefore, there should be proper written evidence on file or of record showing that the requisite statutory preliminary requirements to a legal meeting had been complied with, and showing that such a meeting had been held, and the proceedings thereof, courts should bear in mind that, either from a lack of experience or otherwise, it frequently happens that the persons whose duty it is to give notice of and keep a record of such meetings fail to keep the files and records of their office in a clear and intelligible manner, and that to require the utmost strictness in this respect would result in many cases in rendering void the proceedings of such *quasi* corporations. Their proceedings, therefore, should be liberally construed, and all proper intendments made in favor of their regularity."

It is also said :

"There may, in certain cases, be a ratification by the corporation of an unauthorized contract. It must, however, in such cases, appear that the contract was one which could in the first instance have been legally entered into by the corporate authorities."

In this case the original agreement between the commissioners, made in 1857, was introduced in evidence. This agreement was also entered at large in the records of both townships. The circuit judge also found the two townships had acted under this agreement until 1884. We all know how difficult it might be after such a lapse of time to show the regularity of all the proceedings leading up to the allotment. If the commissioners had the authority to make the allotment at a meeting properly called for that purpose, we think their action in making such allotment, though irregular in the first instance, could be afterwards ratified by the parties in interest acting thereunder for a long period of time. If, after so long an interval of time has elapsed, the acts of commissioners are to be discredited because of a failure to enter upon the records all of the preliminaries leading up to the action of the commissioners, the result would be unfortunate. We think the court was fully justified in finding this agreement was in fact made, and that, even though it does not affirmatively appear that a notice of the meeting was given, the agreement, having been acted upon so long, must be deemed to have been ratified. See *Sharp* v. *Township of Evergreen,* 67 Mich. 443 (35 N. W. 67); *Wrought-Iron Bridge Co.* v. *Township of Jasper,* 68 Mich. 450 (36 N. W. 213).

It is said that under Act No. 164 of the Session Laws of 1857 the commissioners had no power to make a reallotment of an existing and traveled highway. It is claimed this act repealed section 1070, 1 Comp. Laws 1857. Section 1070, which is also section 17, chap. 25, Rev. Stat. 1846, reads as follows:

"All highways heretofore laid out upon the line between any two townships shall be divided, allotted, recorded, and kept in repair in the manner above directed."

The title of Act No. 164, Sess. Laws 1857, is broad enough to repeal all of chapter 25, Rev. Stat. 1846. The body of the act does not in terms repeal section 1070. There is no reference in Act No. 164 to the allotment of highways theretofore laid out. All that is said about the repeal of existing laws is as follows: "All acts or parts of acts contravening the provisions of this act are hereby repealed." There is nothing contained in section 1070 which is in contravention of the provisions of Act No. 164, and we think the circuit judge was right in holding its provisions were not repealed.

Counsel say the court has not the power to compel the construction of this bridge against the determination of the commissioner of highways and of the township board not to construct it, and that the necessity for the bridge must be determined by the local authorities, and not by the courts. If it were a question of the necessity of constructing a bridge in the first instance, it is possible counsel would be right in their contention; but the necessity of building a bridge at this point was decided long ago, and by the proper authorities. A bridge was built and maintained for a great many years. It was a part of the highway. No steps have ever been taken to vacate the highway. This portion of the highway was allotted to Casco. Section 3443, 1 Comp. Laws 1897, makes it the duty of a township to keep its highways in a condition reasonably safe and fit for travel. Section 4129, 2 Comp. Laws 1897, provides that the commissioner of highways shall have the care of the building, rebuilding, and repairing of the bridges in his township. Act No. 55, Pub. Acts 1899, provides that, in cases involving expenditures of more than $50, the commissioner shall submit the proposed expenditure to the township board. The record discloses that the expenditure called for is within the amount which may be expended by the commissioner and the township board.

They have refused to make the expenditure, undoubtedly because of the dispute which has arisen between these two townships. The practical effect of this action is to vacate a highway which has never been properly discontinued. This they cannot do.

Other questions are raised by counsel, but we do not deem it necessary to discuss them, because they are disposed of by what we have already said. The relators are entitled to have this bridge rebuilt. *Bigelow* v. *Brooks*, 119 Mich. 208 (77 N. W. 810); *Oxby* v. *Board of Sup'rs*, 124 Mich. 463 (83 N. W. 132). It is the duty of the township of Casco to rebuild it.

Judgment is affirmed.

The other Justices concurred.