STEPHENSON v. COMMON COUNCIL OF THE
CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — DUTIES OF OFFICERS — OFFICIAL
   DISCRETION.
   The duties of the officers of a city are *quasi*-judicial, or in a
   sense legislative, requiring the use of judgment and dis-
   cretion.

2. MANDAMUS—MUNICIPAL CORPORATIONS—SEWERS—OFFICIAL DIS-
   CRETION.
   Mandamus will not interfere to dictate to city officials the
   order in which sewers in the city of Detroit should be
   built, where it appears that by reason of the rapid growth
   of the city the need of sewers is very great, and the at-
   tempt is being made to construct same in the order in
   which the need is most urgent.

Certiorari to Wayne; Browne (Clarence M.), J.,
presiding. Submitted January 4, 1921. (Calendar
No. 29,462.) Decided March 30, 1921.

Mandamus by Burnette F. Stephenson to compel
the common council of the city of Detroit and others,
to proceed with the construction of a sewer. From
an order granting the writ, defendants bring cer-
tiorari. Reversed.

*Walter Barlow (Clarence E. Wilcox,* of counsel),
for appellants.

*Bernard F. Weadock,* for appellee.

CLARK, J. The plaintiff owns 322 lots in a sub-
division annexed to the city of Detroit in 1916. The
lots are adjacent to a street known as the Seven-
Mile road. In 1918 the city adopted a plan for the

construction of public sewers. In conformity to a part of such plan the city on June 3, 1919, entered into a contract with the defendant the J. Connelly Construction Company to construct in said street approximately 4,700 feet of sewer, which, if constructed, would furnish plaintiff needed facilities for sewerage. The plaintiff made preparation in his property for using such sewer when it should be constructed. Following the contract construction was begun, and after 109 feet of sewer had been laid the work ceased entirely. The contract provided in part:

"It is further agreed that the work embraced in this contract shall be prosecuted in such order and at such places and parts of the work as the said department may direct. * * *

"The contractor shall commence work within ten (10) days after receipt of written notice to start work, by the commissioner, or by mutual consent on a day specifically stated in said written notice. * * *

"The work shall be prosecuted regularly and uninterruptedly, unless the commissioner shall otherwise specifically direct, with such force and at such points as to insure its full completion within the time herein stated. * * *

"Time of completion is the essence of this contract, and the value of such time to the city, including cost of inspection, is fixed at the amount per working day, stated in the proposal."

The date set for completion of the work was July 15, 1920. The plaintiff requested the several city officials, named as defendants, to require of the contractor prompt completion of the work according to the contract.

On May 18, 1920, plaintiff filed his petition for writ of mandamus to be directed to the defendants, the common council, the mayor, the commissioner of

public works, and the engineer of the said city, com-- manding them to take affirmative action under the city charter and the contract to compel the contractor to resume the work of construction and to prosecute such work to completion and commanding the contractor to resume work and to complete the contract.

On the part of the defendants it was shown that since 1915 there had been annexed to the city 32.65 square miles of territory, that allowing 6 lots to an acre this would be equivalent to 125,376 building lots, that plaintiff's land represented one-fourth of one per cent. of the territory annexed, that the estimated cost of the city at large of constructing sewers in the territory so annexed according to the plan adopted is $18,000,000, that at the time of answer in this case the total of contracts for the construction of sewers in such territory was $7,283,469, that the cost of sewers completed in 1919 was $589,832, that contracts partially completed totaled $756,114, that work on the different sewers was progressing as rapidly as possible and that to care for pressing needs of inhabitants in those districts where residences had been built 15 miles of ditches had been cleaned out or constructed. In short the defendants contended that in this rapidly growing city, where demands for sewerage were pressing, they were having sewers constructed as rapidly as possible and in the order of the greatest 'need. The contention of defendants is thus stated by counsel:

"The plaintiff has no specific right or interest involved in this plan adopted by the city for the construction of public sewers in this territory different from the other property owners and residents of the annexed district. Whatever rights or interests he has in the public improvements to be made in the district are in common with all the other property

owners and residents of the district and in the proportion only that his property holdings therein bear to the rights and interests of all the other people interested in the property and public improvements to be made in the annexed territory. The public sewers in the district are being constructed at the expense of the people at large of the whole city; and it would naturally seem that the common council, the representatives of the people, who furnished the means for the construction of these sewers should have the right to determine when, where and how the sewers shall be constructed without being interfered with by the courts in the plan adopted by the council for the construction of public improvements in this district.

"The defendants claim that the courts have no jurisdiction to intermeddle with this plan adopted by the city for the construction of public sewers in and for the drainage of this territory annexed to the city."

We think counsel are right in this contention and that the judgment of the court allowing the writ, here reviewed on certiorari, must be reversed. The duties of the officers of the city are *quasi*-judicial or in a sense legislative. Judgment and discretion are to be used. These duties will not be controlled by mandamus. After the adoption of the general sewer plan and the making of the contract, the city in its discretion might modify the contract, and agree with the contractor to work elsewhere where the needs were more urgent.

"Giving the record before us the most favorable construction it will bear upon the facts admitted by the demurrer to the return to the writ of mandamus, it shows simply an attempt by the petitioner to compel the common council to proceed with the performance of its *quasi*-judicial or legislative duties respecting the construction of a sewer. This is plain from the alternative writ and return thereto. The

question, therefore, is whether mandamus will be awarded for such purpose. The duty of providing for and constructing sewers by a municipality is a *quasi*-judicial or legislative power involving judgment and discretion. \* \* \* Such *quasi*-judicial or legislative duty will not be controlled by mandamus. \* \* \* The expediency of entering upon public improvements is left almost entirely to the judgment of the local authorities. \* \* \* 'The books abound with cases which assert and enforce the rule that mandamus will not lie to control the exercise of discretion or official judgment.' \* \* \* We think it clear that no case was made for the issuance of a writ of mandamus, and therefore the demurrer to the return should have been overruled." *State, ex rel. Vanderwall,* v. *Mayor, etc., of Phillips,* 134 Wis. 437, 442, 443 (114 N. W. 802, 804).

"Since municipal authorities are vested with a *quasi*-judicial discretion as to street improvement, courts have no power to order them to make all alike, or to keep all in the same state of repair. Likewise, a court cannot require a municipal corporation to construct a sewer, irrespective of the exercise of discretion vested by law in the municipal authorities to determine the practicability of the sewer ordered, the availability of taxation for the purpose, and like matters." 4 McQuillin, Municipal Corporations, § 1836, page 3947.

See, also, 4 McQuillin, Municipal Corporations, § 1435, page 3037; *City of Vicksburg* v. *Waterworks Co.,* 202 U. S. 453, 471, 472 (26 Sup. Ct. 660); 3 Dillon, Municipal Corporations (5th Ed.), § 1151, pages 1819, 1820.

Plaintiff's counsel cites *Brophy* v. *Schindler,* 126 Mich. 341, 347; *Berube* v. *Wheeler,* 128 Mich. 32; *Attorney General* v. *Alcona Supervisors,* 167 Mich. 666, 672; *Oxby* v. *Board of Sup'rs,* 124 Mich. 463. These related to certain statutory duties and are not in point.

The plaintiff in this case also sought to compel construction of a sewer not covered by the contract, but which plaintiff must have for the use and enjoyment of his property. What has been said disposes of this question.

Judgment reversed, with costs to defendants.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.